MARY P. B. HAZARD *et al. Exrs. vs.* ZENAS W. BLISS *et al.*, Board of Tax Commissioners.

MARY P. B. HAZARD *vs.* SAME.

MAY 4, 1921.

PRESENT. Sweetland, C. J., Vincent, Stearns, Rathbun, and Sweeney, JJ.

*(1) Inheritance Tax. Net Estate.*

In assessing the tax under the provisions of the Rhode Island "Inheritance Tax Act of 1916," the amount of the federal estate tax is not deductible as an expense of administration, from the gross estate in ascertaining the value

of the net estate of the decedent for the purpose of imposing the tax upon the "right to transfer" and the tax upon the "right to receive."

*(2)   Inheritance Tax.   Expenses of Administration.*

The payment of a federal estate tax though a proper disbursement by an executor or administrator should not be treated as an expense of administration within the meaning of that expression in the Rhode Island Inheritance Tax Act.

*(3)   Inheritance Tax.   Net Estate.*

The general purpose of the Rhode Island "Inheritance Tax Act of 1916" is to have the tax under Section 1 assessed upon the value of the net estate at the time of the decedent's death and unless so provided in the statute that value is not affected by the tax laws or levies of other sovereignties or by subsequent events.

*(4)   Inheritance Tax.   Right to Transfer.*

The universally recognized principle of inheritance taxation is that it is the right to transfer that is taxed and this right or power to transfer operates at the instant of the decedent's death.

*(5)   Inheritance Tax.*

Under the provisions of Section 5 of the Rhode Island Inheritance Tax Act a tax is imposed upon any transfer of property to any person "as a tax upon the right to receive." The Federal Inheritance Tax Act does not affect the amount transferred from the decedent or the amount transferred to the legatee or heir. The Federal Act taxes the right to transfer and the payment of this tax by the executor out of the assets of the estate while it reduces the amount of the residuary estate and diminishes the amount received by the residuary legatee does not diminish the amount transferred to the residuary legatee by the testator for this is given by the will of the testator under the laws of the State.

VINCENT and SWEENEY, JJ. dissenting.

APPEALS from decrees of Superior Court, on petitions under Inheritance Tax Act of 1916 and appeals sustained and decrees reversed.

SWEETLAND, C. J.   The above entitled causes are appeals taken by the Board of Tax Commissioners from decrees of the Superior Court entered upon petitions filed in accordance with the provisions of the Inheritance Tax Act of 1916. In each of these petitions it is alleged that the petitioners are aggrieved by the determination of said board as to the amount of the inheritance taxes imposed upon the estate of

Rowland G. Hazard, late of the town of South Kingstown, deceased, and ask for the abatement of a part of said taxes.

After hearing, the Superior Court, by its decree entered upon each petition, adjudged that a part of said taxes was illegally assessed and ordered the abatement of such portion; from which decrees the respondent board has appealed to this court.

It appears that said Rowland G. Hazard died January 23, 1918, testate, leaving a gross estate appraised at $3,573,402.72. The testator, after a certain bequest, left all the rest and residue of his estate to his widow, Mary P. B. Hazard. The will was duly probated, letters testamentary were issued, and the petitioners Mary P. B. Hazard and Rowland Hazard qualified as executors. In accordance with the provisions of the "Federal Estate Tax Law of September 8, 1916" a federal estate tax was assessed against the estate of Rowland G. Hazard, amounting to $343,228.48; which tax was paid by the executors. In a statement filed with the respondent Board of Tax Commissioners said executors claimed that in assessing the taxes under the provisions of the Rhode Island "Inheritance Tax Act of 1916" said board should deduct the amount of the federal estate tax of $343,228.48 from the net estate prior to the computation of the state inheritance taxes. The respondent board disregarded this claim and computed the taxes under the provisions of Section 1 of said inheritance tax act of 1916 at $15,955.49 and the tax under Section 5 of said act at $82,229.28; thereupon, in accordance with the provisions of said act, the executors filed their petition in the Superior Court, and Mary P. B. Hazard, as residuary legatee of said estate, also filed her petition in the Superior Court. Each petition applied for an abatement of said taxes. After hearing upon said petitions the Superior Court ordered such an abatement of the taxes assessed by said respondent as would result from a deduction of the amount of the federal estate tax from the net estate prior to the computation of the state inheritance taxes. The appeals now before us

were duly taken by the respondent board from said adjudications and orders of the Superior Court.

Before hearing upon these appeals Walter A. Edwards, Esq., a member of this bar, stated to the court that he represented the executors and legatees in a number of other large estates, who would be affected by the determination of the questions involved in these appeals, and asked permission to file a brief in support of the contentions of these petitioners. All the adversary parties consented thereto and the request of Mr. Edwards was granted. As *amicus curiae* he has filed a voluminous brief and also a supplemental brief which has been of assistance to the court.

The "Federal Estate Tax Law of September 8th, 1916," has, among others, the following provisions: Section 201 "A tax (hereinafter in this title referred to as the tax), equal to the following percentages of the value of the net estate to be determined as provided in section two hundred and three, is hereby imposed upon the transfer of the net estate of every decedent dying after the passage of this Act, whether a resident or nonresident of the United States:." Then follows a table of percentages varying in accordance with the amount of the net estate.

Section 202: "The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated:."

Section 203: "For the purpose of the tax the value of the net estate shall be determined—(a) In the case of a resident, by deducting from the value of the gross estate— (1) Such amounts for funeral expenses, administration expenses, claims against the estate, unpaid mortgages, losses incurred during the settlement of the estate arising from fires, storms, shipwreck, or other casualty, and from theft, when such losses are not compensated for by insurance or otherwise, support during the settlement of the estate of those dependent upon the decedent, and such other charges against the estate, as are allowed by the laws of the

jurisdiction, whether within or without the United States, under which the estate is being administered; and (2) An exemption of $50,000;."

Section 207 provides that the executor shall pay the tax to the collector or deputy collector of internal revenue. Section 208 states that it is "the purpose and intent of this title that so far as is practicable and unless otherwise directed by the will of the decedent the tax shall be paid out of the estate before its distribution." Section 209 provides that "unless the tax is sooner paid in full, it shall be a lien for ten years upon the gross estate of the decedent, except that such part of the gross estate as is used for the payment of charges against the estate and expenses of its administration, allowed by any court having jurisdiction thereof, shall be divested of such lien."

The Rhode Island "Inheritance Tax Act of 1916" (Chapter 1339, Public Laws, 1916) provides, among other things, as follows: "Section 1. A tax shall be and is hereby imposed upon the net estate of every resident decedent, . . . as a tax upon the right to transfer. Such tax shall be imposed at the rate of one-half of one per centum upon the excess value of each said estate over $5,000."

"Sec. 2. The value of the net estate of a resident decedent for the assessment of the tax imposed by Section 1 of this act shall be ascertained by taking the full and fair cash value of the real property located within this state and of any interest therein, and of the tangible and intangible personal property of the decedent at the date of his decease, . . . and adding thereto all gains made during the settlement of the estate in reducing the intangible personal property thereof to possession, except so much of such intangible personal property as is represented by bonds and stock in any corporation. . . . From the value thus obtained there shall be deducted the amount of all claims allowed against the estate, all funeral expenses and expenses of administration, the amount of the allowance made for the

support of the widow and family of the decedent by the probate court in accordance with law, and the amount at the death of the decedent of all unpaid mortgages, except mortgages on real property not located within this state, not deducted in the appraisal of the property mortgaged; and there shall be also deducted all losses incurred during the settlement of the estate in the reduction of the intangible personal property to possession, except so much of such intangible personal property as is represented by bonds and stock in any corporation."

"Sec. 3. The tax imposed by Section 1 of this act shall be assessed upon the full and fair cash value of the net estate determined by the board of tax commissioners as hereinbefore provided and notice of the amount of said tax shall be mailed to the executor, administrator, or trustee by said board. . . . Such tax shall be due and payable by the executor, administrator, or trustee of the estate immediately upon notification of the amount thereof. . . . Said tax shall be paid direct to the general treasurer of the state for the use of the state, and shall be and remain a lien upon the estate until the same shall be paid, and the executors, administrators, or trustees shall be personally liable for such tax until the same is paid."

"Sec. 5. A tax shall be and is hereby imposed upon any transfer by a resident of this state of any real property within the state, or any tangible or intangible personal property, or interest therein or income therefrom . . . to any person or persons, in trust or otherwise, as a tax upon the right to receive."

"Sec. 6. All taxes imposed by Section 5 of this act shall be assessed by the board of tax commissioners upon the full and fair cash value of the property transferred at the rate hereinafter described and only upon the excess of the exemption hereinafter granted, to be paid direct to the general treasurer of the state, for the use of the state, and all executors, administrators, or trustees shall be personally liable for any and all such taxes until the same are paid."

"Sec. 30. Except as otherwise provided in this act, every net estate, inheritance, devise, bequest, legacy or gift upon which a tax is imposed under this act shall be appraised at its full and fair cash value as of the date of the death of the decedent."

The contention of said executors and residuary legatee is that the federal estate tax should be regarded as an expense of administration and hence the amount of such tax should be deducted from the gross estate in ascertaining the value of the net estate of the decedent for the purpose of imposing the tax upon "the right to transfer" and the tax "upon the right to receive." If this contention should not be sustained said petitioners further claim that as the executors were obliged to pay the federal estate tax amounting to said $343,228.48, neither the right to transfer nor the right to receive was exercised upon that portion of the decedent's net estate and such portion should be disregarded in imposing the taxes upon those rights or privileges. The justice presiding in the Superior Court refused to sustain the second contention of the petitioners but did order an abatement of said taxes on the ground that the federal estate tax was one of the expenses of administration of the decedent's estate to be deducted from the gross estate in ascertaining the amount of the decedent's net estate, and also should be deducted in ascertaining the full and fair cash value of the residuary legacy transferred by the testator to Mary P. B. Hazard.

Different forms of inheritance taxes have been established from time to time by the Congress of the United States and by the legislatures of most of the states and are now in force with somewhat varying provisions; but all "rest in their essence upon the principle that death is the generating source from which the particular taxing power takes its being and that it is the power to transmit or the transmission from the dead to the living on which such taxes are more immediately rested." *Knowlton* v. *Moore*, 178 U. S. 41. It is commonly held that such taxes are not imposed upon property but on the succession to the property of a decedent permitted and

regulated by the laws of the several states. These taxes generally fall into one of two classes—one which looks to and taxes the privilege given to the owner of property to have it transferred by will or by operation of law to others at his death. This is called in our act "a tax upon the right to transfer." This is the right in the decedent to transfer his whole net estate, and a tax of this nature is generally denominated an "estate tax." Of such kind is the federal estate tax of September 8, 1916. The other class of inheritance taxes is imposed upon the privilege given to the heir, devisee or legatee to take that portion of the decedent's estate which under the terms of the decedent's will or under the provisions of law relating to the descent and distribution of intestate estate passes to him by reason of the transfer from the decedent. This is referred to in our act as "a tax upon the right to receive." Taxes of this nature are generally termed "succession or legacy taxes." Of this kind was the federal war revenue tax of June 13, 1898, and such are the inheritance taxes in force in most of the states under a variety of titles. The Rhode Island statute, unlike the federal inheritance tax law now in force and unlike all but one of the state acts on the subject, imposes upon the transfer of a decedent's property an estate tax by Section 1, and a succession or legacy tax by Section 5. The State of Mississippi by a statute enacted after the Rhode Island act has adopted its essential features.

We will first consider the petitioners' claim that as an expense of administration the amount of the federal estate tax should be deducted from the value of the gross estate in ascertaining the amount of the decedent's net estate and in ascertaining the fair cash value of the residuary legacy given to Mrs. Hazard. The petitioners urge that they are supported in this claim by the authority of *Bullard* v. *Redwood Library,* 37 R. I. 107. That case was decided before the passage of our state inheritance tax law and had no reference to the imposition of an inheritance tax in this state. It appeared in an agreed statement of facts that a considerable

portion of the estate of a decedent, a resident of this state at the time of her death, was physically in Massachusetts; that to get possession of such assets the executors of the decedent's estate were obliged to pay inheritance taxes in accordance with the inheritance tax laws of Massachusetts, which taxes were based upon the amount of certain pecuniary legacies to persons, and educational and religious institutions, none of whom were residents of Massachusetts. The court found an intention on the part of the testatrix to transmit the full amount of such pecuniary legacies to the beneficiaries named and held that the inheritance tax laws of Massachusetts could not be regarded as a regulation of the exercise of testamentary power by a citizen of this state; that the Massachusetts inheritance tax was a charge upon the decedent's property actually situated in Massachusetts and not upon the pecuniary legacies given by the will; that as the executors were compelled to pay the tax in order to obtain control of the property in Massachusetts for the purpose of its administration such tax should not be charged against and deducted from the amount of said pecuniary legacies. The court lays particular stress upon its finding that it was the intention of the testator to transmit the full amount of the pecuniary legacies to the beneficiaries named. In view of that intention, even if the Massachusetts tax had been charged against such legacies, it was plainly the duty of the executor to exonerate the legacies by paying the tax out of the residuary estate. For this reason and because the executors were compelled to pay the tax in order to obtain control of the property in Massachusetts, for the purposes of its administration, the court does speak of the payment as an expense of administration, perhaps not entirely with precision. It was a payment out of the residuary estate and it is there that the burden of the expenses of administration are placed. The court was not called upon to make the distinction between an expense of administration and other payments made out of the residuary estate, a distinction which the construction of the

inheritance tax law now requires.    The decision in *Bullard v. Redwood Library* applies to testamentary construction and to probate administration and accounting upon a state of the facts similar to those presented in that case.    The scope of that decision should not be extended to govern questions of inheritance taxation.    If in that case the Massachusetts tax had been imposed upon the subject of a specific legacy, situated in that state, and the testator had not intended that the legacy should be relieved of charges, even in the absence of a Rhode Island inheritance tax law the court probably would have regarded the tax as a charge upon the particular property in Massachusetts and not as a disbursement to be taken from the residuary estate.    The court under such circumstances would not have denominated the payment as an expense of administration.    We do not regard the case of *Bullard* v. *Redwood Library*, under the provisions of our inheritance tax law, as an authority for the contention that the payment of a foreign inheritance tax by an executor or administrator in this state is an expense of administration.

The broad claim is also urged in behalf of the petitioners that, as administration of an estate includes every detail involved in the process of collecting the assets of an estate and placing them finally in hands where they belong, in accordance with law, every expenditure made by an executor or administrator is an expense of administration and is included in that phrase as used in our inheritance tax law. If this was accepted as the true interpretation of the expression it would include the payment of all legacy taxes imposed by Section 5 of the act, when paid by the executor or administrator, and would result in imposing the burden of all legacy taxes so paid upon the residuary legatee, contrary to the plain intent of the act.

This part of the petitioners' contention presents the narrow question, as to the interpretation which shall be given to the words "expenses of administration" as they are used in the Rhode Island statute.    The petitioners have cited the following cases as authority for giving the term a comprehensive

meaning.   We have examined these cases and few appear to us to be sufficiently in point to be of value upon this question.   In *Northern Trust Co.* v. *Lederer,* 257 Fed. 812, the United States District Court was considering a question in a sense the converse of that before us.   In ascertaining the net estate of a decedent for the purpose of imposing the federal estate tax it is provided that "administration expenses" "claims against the estate" and "such other charges against the estate as are allowed by the laws of the jurisdiction . . . under which the estate is being administered" shall be deducted from the gross estate.   It was claimed that under some one of these classes of deductions the collateral inheritance tax imposed by the State of Pennsylvania should be deducted.   The court held that under the federal law the state collateral inheritance tax might be deducted under one or the other of the first two classes of deductions and if the right to do this was doubtful then under the third class.   This case went by appeal to the United States Circuit Court of Appeals. (*Lederer* v. *Northern Trust Co.* 262 Fed. 52.)   That court held that it was bound by the construction placed on the Pennsylvania collateral inheritance tax act by the Supreme Court of Pennsylvania in *Jackson* v. *Myers,* 257 Pa. 104, wherein it was held that the tax imposed by the collateral inheritance tax law was an estate and not a legacy tax.   As an estate tax it was clearly within the provisions of the federal estate law providing for the deduction from the gross estate of a charge against the estate of a decedent allowed by the laws of the jurisdiction under which the estate is being administered. The Circuit Court of Appeals explicitly refused to pass upon the question of whether the term "administration expenses" in the federal statute is restricted to or expanded beyond its ordinary meaning.   In the Supreme Court of the United States (40 Supreme Court Rep. 483) a petition for writ of *certiorari* to review the judgment of the Circuit Court of Appeals was denied.

*In re Roebling's Estate,* 89 N. J. Eq. 163, was a determination by the Vice Ordinary which was reviewed on appeal by the Court of Errors and Appeals (*Bugbee* v. *Roebling,* 111 Atl. 29) and there affirmed. In neither opinion does the court consider or pass upon the interpretation which should be given to the terms "expenses of administration" and "administration expenses." Each court does hold that in estimating the value of a legacy for the purpose of imposing the state legacy tax the amount of the federal tax should be deducted, in accordance with the petitioners' second claim. We will refer to this case again in considering that branch of the contention of the petitioners.

In *People* v. *Pasfield,* 284 Ill. 450, the Supreme Court of Illinois was considering the measure of the inheritance tax under the state law of three classes of residuary legacies. The legatees of each class had a different relation to the testator. The inheritance tax under the Illinois law is a legacy and not an estate tax. Hence, the term "expenses of administration" does not appear in the statute as in the federal and the Rhode Island acts and the court was not called upon to construe the term as a statutory provision. The real question before the court was whether the tax should be measured by the value of the legacy which devolved under the will or by the value of the beneficial interest actually received by the legatee. The payment of the federal tax of necessity reduced the value of the residuary estate and thereby it reduced the amount received by the legatees. The court stated that the federal tax is an expense or a charge against the estate of the decedent and not an express charge against the shares of the legatees or distributees of the estate. The court appears inclined to designate it as an expense of administration, in a somewhat broad and general way, perhaps for want of a more exact designation. As the court held that the amount received by the legatees was the measure of the tax it made little difference what the court denominated the federal estate tax. It is a tax not on the estate of the testator or intestate but

one imposed upon the transfer of the interest in the estate which ceased because of death. This transfer has no physical existence. It is not a beneficial interest belonging to any living person. Viewed as a privilege it was not one created or regulated by federal law but by the domestic laws of the state. That it might gather in the tax so imposed the federal government required the executor or administrator to take funds from the assets of the estate and pay this tax. This expenditure of the assets of the estate by the personal representative is of a peculiar nature and does not admit of satisfactory classification among the usual disbursements of an administration or executor. But whether the court called it "an expense of administration," in disregard of the usual signification of those words, or "a charge against the estate," or however otherwise it might be designated, the result in view of the Court's construction of the Illinois law would be the same. Such payment reduced the value of the beneficial interest received by the residuary legatees which was the vital circumstance in the opinion of the court.

*People v. Northern Trust Co.*, 289 Ill. 475, follows *People v. Pasfield, supra,* without discussion.

In *State* v. *First Calumet Trust and Savings Bank,* 125 N. E. 200, the Appellate Court of Indiana held that the federal estate tax should be deducted from the value of a decedent's property before assessing the state inheritance tax but on other ground than because it was an expense of administration. The state inheritance estate tax of Indiana is a legacy and not an estate tax. The Indiana act like the Illinois statute has no specific provision for the deduction of "expenses of administration" and the court was not called upon to construe that term nor does the court throughout the opinion use the expression in connection with the assessment of the state inheritance tax save to make the misstatement that the New York Court of Appeals in *In re Estate of Sherman,* 222 N. Y. 540, reverses the holding of the Appellate Division, 166 N. Y. Supp. 19, that the federal estate tax was not an expense of administration. In fact

the order of the Appellate Division was affirmed by the New
York Court of Appeals in that case.

In *State* v. *Probate Court of Hennepin County*, 139 Minn.
210, the court approved a determination of the probate
court that under the Minnesota inheritance law the federal
estate tax should be deducted from the residuary estate as
an expense of administration in fixing the clear value of the
residuary legacy for the purpose of imposing the state tax.
The Minnesota tax is a legacy and not an estate tax. The
court was not construing a statutory provision but in a
general way appeared to regard the federal tax as an amount
expended in administering the estate or in paying a proper
charge against it and as a payment which lessened the value
of the beneficial interest passing to the residuary legatee
and hence should be deducted.

*Plunkett* v. *Old Colony Trust Co.*, 233 Mass. 471, has no
reference to the federal estate tax as "an expense of admin-
istration." The question before the court was whether
the federal tax should be charged against the residue of the
estate or apportioned pro rata among the devisees and
legatees. The court held that the federal tax is imposed
upon the transfer of a net estate and not on the particular
legacies or distributive shares. The court applied the
general rule that "failing any testamentary provision to the
contrary debts charges and all just obligations upon an estate
must be paid out of the residue" and held that this tax must
rest on the residue of the estate. The same result was
reached in *In Re Hamlin et al.*, 226 N. Y. 407. In the course
of its opinion the court said, "As to the equity of requiring
payment of the tax by the residuary legatees and relieving
the remaining legatees from any contribution to the same
the question is susceptible of conflict of opinion. The Con-
gress has spoken and it is our function to interpret not to
legislate." That the case of *In re Hamlin et al., supra*, is
in no way based upon a holding that the federal estate tax
is an expense of administration is indicated by the fact that
the New York Court of Appeals including five of the six

judges who sat in that case sitting in *In re Sherman's Estate*, 222 N. Y. 540, approved a decision of the Appellate Division that the federal estate tax was not an expense of administration.

On the point now under consideration the petitioners are entitled to place some reliance upon *Corbin* v. *Townshend*, 92 Conn. 501, for in that case the court was construing a provision of the Connecticut inheritance tax law and did explicitly hold that the payment of the federal estate tax was an expense of administration within the meaning of that term as used in the Connecticut state law.

In our opinion the provision authorizing the deduction of "expenses of administration" from the value of the gross estate for the purpose of ascertaining the value of the net estate under Section 3 of the Rhode Island act should not be given the broad construction which the petitioners would have us place upon it.    In this act it is used in the restricted sense in which it is employed elsewhere in our statutes. When the term "expenses of administration" appears in our laws in connection with matters other than the inheritance tax it refers to the disbursements made by a personal representative in probate proceedings and in matters relating thereto.    It includes expenses incurred in reducing the assets of an estate to possession, in holding them or disposing of them in accordance with our probate law and the decrees of the probate court.    That is the ordinary signification of the phrase when used in our law and our practice.    No provision of the inheritance tax act indicates that it was the intention of the General Assembly to give it a broader meaning there.    The context indicates that it is used in its ordinary and restricted sense.    It is not even assumed by the General Assembly that the expression will be construed to include the funeral expenses of the deceased or the payment of the allowances of the probate court for the support of his dependent family.    Both of these last named disbursements are made by a personal representative in the course of his duty under the provisions of the

probate law and are more closely related to the administration of a decedent's estate than this peculiar disbursement which the administrator is required to make by the direction of the federal legislature.   It is true that the federal estate tax is a disbursement for which the executor or administrator will be allowed credit in his account but this fact by no means concludes the question.   The payment of a federal estate tax though a proper disbursement by an executor or administrator should , not be treated as an expense of administration within the meaning of that expression in the Rhode Island inheritance tax act.

(2)

The respondent board has cited *In re Sanford's Estate*, 175 N. W. 506, and *In re Week*, 169 Wis. 316, as authorities adverse to the petitioners' contention.   It appears from an examination of those cases that the courts in Iowa and Wisconsin have not regarded the payment of the federal estate tax as an expense of administration.   In the New York cases we find an appreciation of the anomalous character of an administrator's disbursement in paying the federal tax, and also of the proper limitation which should be placed on the term "expenses of administration" in relation to the assessment of an inheritance tax.   In *Matter of Westurn*, 152 N. Y. 93, it appeared that the costs, court charges and allowances of the successful contestants of a will were charged upon the estate, were payable by the administrator and became a proper disbursement to be allowed upon a final settlement of his account.   The court held that these charges could not be deducted in valuing the estate for the purpose of the New York inheritance transfer tax.   In *Matter of William H. Penfold*, 216 N. Y. 171, it was held that the transfer tax of states other than New York imposed by the courts of those states upon portions of the decedent's estate and paid by the executor should not be allowed as deductions from the clear market value of the decedent's estate under the inheritance tax laws of New York.

It was pointed out in *In re Sherman's Estate*, 166 N. Y. Supp. 19, that "it is not every legitimate expenditure by an

executor or administrator which is to be deducted as an expense of administration in fixing the sums upon which the transfer tax is to be computed." The court cited as instances, *Matter of William H. Penfold Estate, supra,* and *Matter of Westurn, supra,* and held that the federal estate tax should not be treated as an expense of administration and deducted from the assets of the estate before computing the New York transfer tax. This determination was approved by the Court of Appeals, 222 N. Y. 540. See also *Matter of Bierstadt,* 178 App. Div. 836. In our opinion the first claim of the petitioners is without merit.

(3) We will now pass to the consideration of the petitioners' other contention, viz., that for the purpose of assessing the state inheritance taxes, that portion of the assets of the estate which the executor used to pay the federal estate tax cannot properly be said to have been transferred from the testator nor to have been transferred to the residuary legatee. It cannot be questioned that the tax upon the right to transfer provided for in Section 1 of the act, as it relates to the estate of a resident decedent, is to be measured by the full and fair cash value of his net estate under the provisions of Sections 2 and 3. According to Section 2 his net estate is the remainder obtained after making the deductions there specified from his gross estate. We have said that the federal estate tax should not be deducted as an expense of administration and clearly it is not within the terms of any other deduction there named. It follows that, so far as the estate tax imposed by Section 1 is concerned, the net estate transferred included the amount paid for the federal estate tax and the estate tax imposed by that section should be assessed without regard to the payment of the federal tax.

The petitioners urge that notwithstanding the determination which we may reach upon their claim that the federal estate tax was an expense of administration we should nevertheless hold that the federal tax paid out of the estate by the executors should not be considered as included in the

legacy transferred by the testator to the residuary legatee. It might be answered generally to this claim, that as the transfer from the dead and the transfer to the living are correlative and complementary processes, in contemplation of the law whatever is transferred from the testator or intestate of necessity is transferred to the legatees, devisees, next of kin or heirs.   The petitioners however have cited a number of cases which they claim support their position that the federal estate tax should be deducted in assessing the tax upon the legacy to Mrs. Hazard and we will consider that claim more fully.

It should be noted that most of the cases, concerning the effect of the payment of the federal estate tax, arise, as does that at bar, solely with reference to the amount of tax imposed upon a residuary legacy.   This naturally is the case for in the absence of a testamentary provision to the contrary all charges against the estate fall upon the residue and reduce the amount of the residuary legacy.   If the estate is sufficient to pay the other legacies and the charges against the estate the question of the reduction of such other legacies by the payment of the federal estate tax does not arise. A legatee, other than the residuary legatee, receives the full amount of his legacy less the state legacy tax and he has no further concern in the matter.

In considering this question we may start with the uncontroverted principle that the right to take property by descent or devise is not a natural one but is a privilege granted by the state upon such condition as it may impose and subject in all respects to its regulation.   *Magoun* v. *Illinois Trust and Savings Bank*, 170 U. S. 283.   As we have said above in this opinion, inheritance taxes are regarded as taxes upon the power to transmit or upon the transmission of property and not upon the property transmitted.   It has been held generally that this transmission or transfer from the dead to the living takes place at the moment of the decedent's death.   Although the tax is not one upon the decedent's property, in all statutes the value of the property

is made the measure of the tax. But the statutes of the different states, as construed by the courts of the respective states, are not uniform as to the quantity of property which shall be taken as the measure of the tax nor as to the exact point of time at which the value of the property shall be estimated. Some courts have found in their tax acts the legislative intent to measure the tax by the value of the property which actually devolved from the decedent to the legatee by will or by operation of law at the instant of the decedent's death; others regard the measure as the value of the property which is actually received by the legatee. This marks the difference between the cases. It cannot be called conflict, because it is not questioned that it is within the power of the state to take either value in estimating the amount of the tax. If we have analyzed the cases correctly the difference which they present is not one of principles but of statutory enactments, as those enactments are construed by the courts. As to the principles involved in inheritance taxation there is little divergence of opinion.

In *Hooper* v. *Shaw*, 176 Mass. 190, the court was considering the question as to whether or not the federal legacy tax of 1898 should be deducted from the amount of a legacy before computing the state tax upon the legacy. The court held that it should be so deducted. It finds the measure of the state tax to be the "property . . . which shall pass . . . to any person." The court said it did not question the power of a state to adopt a harsher rule, but was of the opinion "that these words (in the Massachusetts act) most naturally signify the property which the legatee actually would get were it not for the state tax."

The New Jersey Court of Errors and Appeals in *Bugbee* v. *Roebling*, 111 Atl. 29, affirmed the judgment of a Vice Ordinary in *In re Roebling's Estate*, 89 N. J. Eq. 163, that the federal estate tax is to be deducted from the value of the estate in ascertaining the clear market value of the property transferred. The Court of Errors and Appeals said of the provisions of the New Jersey state inheritance tax law,

"we think these provisions indicate that the tax is to be calculated on the beneficial interest actually received by the legatee and not on what he would receive if there were no federal tax."

In *State* v. *First Calumet Trust and Savings Bank*, 125 N. E. 200, it was held that the state inheritance tax of Indiana should be computed upon the residue after deducting from the net estate the amount of the federal estate tax. Some light is thrown upon the Court's view as to the point of time at which the value of a legacy should be taken, for the purpose of imposing the state tax, by its comment upon the title of the Indiana act, which is an "Inheritance Tax." This the court says, "implies that which is received by the heirs."

In *People* v. *Pasfield*, 284 Ill. 450, it was held that the federal estate tax should be deducted before computing the Illinois state inheritance tax. The court refers to the state tax as providing "that the tax shall be imposed upon the beneficial interest which passes to the persons therein named and the rate is fixed on the $100 of the clear market value of such property received by each person." Later the court said, "the legatees and distributees cannot in any sense be held to have 'received' any part of the duty that is paid to the government by the executor or trustee or administrator as such estate tax."

In *Corbin* v. *Townshend*, 92 Conn. 501, it was held that the federal estate tax should be deducted from the estate before computing the state inheritance tax. The court said that "the inheritance taxes due the State of Connecticut are measured by the amount of property passing to the beneficiary." The opinion of the court indicates that it gives to the phrase "property passing to the beneficiary" an interpretation like that placed upon a similar expression by the Massachusetts court in *Hooper* v. *Shaw, supra*, and regards it as "property which the beneficiary actually would get."

In *State* v. *Probate Court of Hennepin County*, 139 Minn. 210, it was held that the federal estate tax should be deducted

from the value of the estate before computing the amount of the state tax and said of the Minnesota inheritance statute "according to the statute the tax is to be computed only upon the clear value of the property or interest therein which actually passes to the beneficiary."

In *Van Biel's Estate*, 257 Pa. 155, it was held that a transfer tax paid to the State of New Jersey upon stock and bonds situated in that state and belonging to the estate of a decedent in the State of Pennsylvania should be deducted in appraising the clear value of the estate subject to the collateral inheritance tax of Pennsylvania. The court approved the holding that the Pennsylvania collateral inheritance tax is imposed upon the clear value of the property passing to the legatee or devisee and said that it was the net worth of said stock and bonds that passed to those entitled to the estate. In this case and in Knight's Estate, 261 Pa. 537, it is clear that the Pennsylvania court regards the property which "passes" to the legatee to be the property which he actually "receives" or "gets," as is the view of the Massachusetts court in *Hooper* v. *Shaw, supra.* The decision in the latter case is said by the Pennsylvania court to be in accord with its view.

In the foregoing cases, cited by the petitioners upon this point, there is no disagreement with the universally recognized principle, applicable to all inheritance taxation, *i. e.;* (4) that it is the right to transfer that is taxed and that this right or power to transfer or transmit operates at the instant of the decedent's death. Further, from an analysis of the court's opinion in each of these cases we find it more or less clearly and explicitly stated that the decision is based on a construction of the state inheritance tax act to the effect that the amount of the legacy tax should be measured, not by the value of the property transferred but by the value of the property which the legatee receives, as the Massachusetts court has expressed it what "the legatee actually would get were it not for the state tax." These opinions should have persuasive force with us only in the event that we find a like legislative intent in the Rhode Island statute.

Section 5 of the Rhode Island act provides that a tax shall be imposed "upon any transfer" of property to any person "as a tax upon the right to receive." Applying the provisions of this section to the case at bar the testator did by will at the instant of his death, save as to the amount of a certain legacy, transfer to Mrs. Hazard all of his estate which the laws of Rhode Island permitted him to transfer. We say the laws of Rhode Island because it is the law of the state and not the federal law which limits and regulates the transfer of a decedent's property situated within the state of his domicile, whether such decedent dies testate or intestate. He did not transfer such portion of his property as was necessary to pay his debts, his funeral expenses, the expenses of administering his estate and such other proper allowances from his estate as the probate court should make. He did not transfer that part of his estate because the laws of Rhode Island would not permit him to do so. All the rest of his estate, save the amount of a legacy to a person other than Mrs. Hazard, he transferred to Mrs. Hazard and the State of Rhode Island permitted him to do so. Upon that transfer so permitted the State imposed a tax or duty; and Section 5 provides that the tax imposed shall be a certain specified percentum of "the full and fair cash value of the *property transferred*." So far it would not appear that there could be question about the measure of the tax upon Mrs. Hazard's legacy. The federal government, however, seeking sources of revenue, also imposed a tax upon one of the privileges which the state had granted. It did not assume to regulate or affect the course of the devolution of the decedent's property, either with reference to his right to transfer or as to the amount transferred. The federal government cannot interfere with the legitimate taxing power of a state. It cannot claim that the privilege to transmit the property of a decedent is one granted by it. But it determined that what is called in Section 1 of the Rhode Island act "the right to transfer" was a proper subject for federal taxation and it measured the amount of its tax,

imposed upon that right, by the same standard that the state employs to measure its tax upon the right. The federal statute does not affect the amount transferred from the decedent or the amount transferred to the legatee or heir. The federal statute finds this so-called right and taxes it. To make such taxation productive of revenue the federal government must collect the tax, and so in the further exercise of its power it orders the personal representative to pay the tax out of the assets of the estate. Such payment reduces the amount of the residuary estate. It diminishes the amount actually received by the residuary legatee. It does not however diminish the amount transferred to the residuary legatee by the testator, for that was given by the will of the testator in accordance with the laws of the state, and was all of the testator's residuary property that he was empowered to transmit under the laws of the state.

In *Gibbons* v. *Ogden*, 9 Wheat. 1, at 197, Chief Justice MARSHALL comments upon the authority of the national government and of a state government to each exercise the power of taxation which is indispensable to their existence, and says that the grant of power to Congress to levy and collect a tax has never been understood to interfere with the exercise of the same power by the state. In the matter before us the nation and the state has each sought to tax the right to transfer. By entering the same field of taxation, equally open to each, neither sovereign has diminished the subject of the tax nor has it reduced the revenues of the other. By the use of the same measure neither has impaired that measure. When the federal government taxed the right to transfer the net estate, it did not reduce the net estate nor that portion which our law permitted the testator to transfer to the residuary legatee; although by reason of the collection of the federal tax the amount which the residuary legatee received was diminished.

In *Blackstone* v. *Miller*, 180 U. S. 189, it was held that the State of New York might subject to its inheritance transfer tax the property in that state of a decedent who was

at his death a citizen of Illinois, notwithstanding that the whole of the succession, including said property in New York, had been taxed in Illinois.

The courts of some other states have given to their respective inheritance tax acts the same construction which we place upon the Rhode Island act. The essential principles applied by such courts being, that the transfer is a creature of the state law, that it takes place at the instant of the decedent's death, that the measure of the tax is the value of the legacy at that time and unless so provided in the state law that value is not affected by the tax laws or levies of other sovereignties or by subsequent events.

In *Estate of Week*, 169 Wis. 316, the court held that the right of both federal and state governments to impose a tax on the transfer of property at death is untrammeled by the exercise of that right by the other, and said of the state transfer tax of Wisconsin: "It is a tax imposed on a transaction, the transaction being the passing of property from the dead to the living. It is not a tax upon the property itself, and, consequently, neither the property nor the value thereof necessarily and inherently constitutes the basis for the amount of the tax. The tax being based on a transaction, however, some basis must be fixed by the legislature by which the tax shall be determined. The legislature has made such basis the clear market value of the property at the time of the transfer. The transfer contemplated occurs at the instant of death. *State* v. *Pabst*, 139 Wis. 561, 121 N. W. 351. There is no provision made in the statute for any deductions from the value of the estate as it may be determined to be as of the date of the death of the deceased, and we see no warrant for reading into the statute provisions for the deduction of any amount which the legislature did not see fit to insert."

Various questions relating to the assessment of the New York transfer tax have been before the courts of that state in a large number of cases and the courts appear to have consistently applied the fundamental principles which we think should govern us in the case at bar.

In *Estate of Swift*, 137 N. Y. 77, it appeared that the testator had provided that the tax upon all legacies should be paid as an expense of administration. This threw the whole burden upon the residuary estate and the residuary legatee. The court held that there should be no deduction from the value of the residuary estate of the amount of the tax to be assessed either upon prior legacies or upon its value. The court said: "Manifestly under the law that which is to be reported by the appraiser for the purpose of the tax is the value of the interest passing to the legatee under the will without any deduction for any purpose or under any testamentary direction."

In *Matter of Penfold*, 216 N. Y. 163, it appeared that between the death of the testatrix and the payment of their legacies to the legatees the securities among the assets of the estate had depreciated and there had been an aggregate loss to the estate of $66,546. In denying the claims that the amount actually coming into the hands of the beneficiaries and not the amount of the property at the decedent's death should be taken as the basis for the computation of the tax the court said: "The tax (so-called) is the toll or impost appropriated to itself by the state for or in connection with the right of succession to property. It accrues therefore at the same time that the estate vests, that is, upon the death of the decedent. The nature of the tax and the time of its accrual has been repeatedly stated by this court."

So far at least as relates to the imposition of an estate tax under our law the situation presented in *Matter of Penfold, supra*, of a depreciation in the estate "during the settlement of the estate in the reduction of the intangible personal property to possession," has been provided for in our statute and such losses may be deducted from the gross estate "except so much of such intangible personal property as is represented by bonds and stock in any corporation." This provision in the nature of an exception indicates the general intent of our statute that for the purposes of the tax the value of the estate transferred shall be taken at the instant

of transfer unaffected by matters not provided for in the act. In commenting on this provision in the Rhode Island act Messrs. Gleason and Otis in their treatise on Inheritance Taxation, 2d ed. 37, say: "Curiously enough both the Rhode Island statute and the Federal Act impose a tax upon the right to transmit. Obviously such a tax must accrue at death and not upon distribution which makes the deduction for losses after death distinctly an act of grace." In the same connection the general purpose of our statute to have the tax under Section 1 assessed upon the value of the net estate at the time of the decedent's death is further shown by the provisions of Section 2 adding to the gross estate certain gains made during the settlement of the estate. This appears to be an exception to the general policy and purpose of the act, to accomplish which a specific provision was required. In a situation the reverse of that presented in *Matter of Penfold, supra,* the New York Court consistently held that the amount of the tax is not affected by the increase in the value of the estate between the date of death and its subsequent distribution. In *Matter of Vassar,* 127 N. Y. 1. In *Matter of Hazard,* 228 N. Y. 26.

In the *Matter of Freund,* 143 App. Div. 335, it appeared that a certain real estate tax was assessed in the City of New York upon the property of a decedent before his death but was not payable until after his death. The court held that the amount of such real estate tax paid was a part of the decedent's net estate at the time of his death, was transferred by reason of the death, and was not to be deducted in computing the state inheritance transfer tax. This decision was affirmed in 202 N. Y. 556.

In *Matter of Sloane,* 154 N. Y. 109, the court said: "The transfer or inheritance tax, so far as residents of the state are concerned, is not a tax upon property, but upon the right of succession to property, and hence the true test by which the tax is to be measured is the value of the estate at the time of transfer of title and not its value at the time of the transfer of possession." . . . "Whenever the appraisal

is made, the value of the property is to be appraised according to the fair and clear market value of the interest at the time of the death of the testator."

In *Matter of Gihon,* 169 N. Y. 443, the court disallowed the claim that the United States legacy tax imposed under the War Revenue Act of 1898 should be deducted from the amount of a legacy before the New York state inheritance transfer tax was computed. This was an application of the principle which we find enunciated in all the New York cases, *i. e.,* that it is the amount of the legacy transferred by the testator and not what the legatee received which measures the tax. The petitioners have urged that this case has no application because the federal tax of 1898 was imposed upon the transfer of a legacy and was charged upon the legacy, while the federal tax of 1916 is upon the transfer of a net estate and charged upon that estate. The petitioners overlook the fact that the question arises here, as in most cases in other states, because the petitioning legatee is a residuary legatee and the burden of the federal estate tax has fallen upon her legacy. In principle the *Matter of Gehon* is directly in point. In that case a legatee was complaining because the state inheritance tax was measured by the amount of the legacy transferred to her by the testator, although that amount had been reduced by the payment of the federal legacy tax. Here the residuary legatee objects to the assessment of the state legacy tax, based upon the amount of the residuary estate as it came from the testator without making allowance for the payment of a federal estate tax, which payment has diminished the amount of the legacy that will be paid to her.

In *Sherman's Estate,* 166 N. Y. Supp. 19, the court held that the state tax was not affected by the amount of the federal estate tax and said: "The state transfer tax is imposed, not upon the amount which the transferee receives, but upon the clear market value of the property at the time of the transfer, and is due and payable at the death of the decedent. It is a tax upon the right to receive an estate, or

a portion thereof, which the state appropriates at the moment of the owner's decease." This decision of the Appellate Division was affirmed in 222 N. Y. 540. See also *In Re Sanford's Estate*, 175 N. W. 506, and *Estate of Hite*, 159 Cal. 392.

The appeals of the respondent Board of Tax Commissioners are sustained. The decrees of the Superior Court appealed from are reversed, and each cause is remanded to the Superior Court with direction to enter its decree denying and dismissing the petition.

SWEENEY, J., dissenting. I agree that the Federal estate tax is not an expense of administration, as used in the clause allowing for the deduction of "expenses of administration" in Section 2 of Chapter 1339, and that it should not be deducted from the estate of the decedent in order to ascertain the net estate left by him, upon which the tax imposed by Section 1 of said Chapter 1339 as "a tax upon the right to transfer" of the deceased is to be assessed.

As to the holding that the Federal estate tax is not to be deducted before the tax upon the "right to receive" is imposed by Section 5 of said Chapter 1339, I am constrained to dissent from the opinion of the majority of the court because, after careful study and consideration of the question, I have come to the conclusion that such deduction should be made.

The question is whether the Federal estate tax, imposed by act of Congress upon the estate of Mr. Hazard, should be deducted in ascertaining the full and fair cash value of the estate passing to Mrs. Hazard as residuary legatee of her husband's estate before assessing the tax imposed upon her by said Section 5 as a tax upon her "right to receive" such property.

This question arises upon the following facts. Rowland G. Hazard, a resident of South Kingstown, Rhode Island, died on the 23rd day of January, 1918, leaving a last will and testament. In and by said will, after a certain bequest, he

gave the rest and residue of his estate to his widow, Mary P. B. Hazard, who, as such residuary legatee, is the petitioner in one of these cases. The will was duly proved and admitted to probate by the probate court of South Kingstown and letters testamentary issued to the petitioners, Mary P. B. Hazard and Rowland Hazard, who duly qualified as executors of said will.

Said executors in compliance with the provisions of Chapter 1339 of the Public Laws of 1916, known as the "Inheritance Tax Act of 1916," approved February 22, 1916, filed with the Board of Tax Commissioners an inventory under oath of the estate of said Rowland G. Hazard, and subsequently filed a supplementary statement containing additional information in regard to the estate, as required by said act. In this supplemental statement the executors claimed as a deduction the amount due the Federal Government under the provisions of the "Federal Estate Tax Law of 1916" as amended by the Acts of March 3, 1917, and October 3, 1917.

In compliance with the provisions of said "Federal Estate Tax Law," the executors filed a return with the Collector of Internal Revenue for the District of Connecticut and in due course a Federal estate tax was assessed against the estate of Rowland G. Hazard amounting to $343,228.48, which was paid by the executors, July 18, 1919, to said Collector of Internal Revenue.

The Board of Tax Commissioners on September 23, 1918, assessed a tax upon the net estate of Rowland G. Hazard amounting to $15,955.49, as a tax upon the right to transfer, imposed by Section 1 of said Chapter 1339, and also assessed a tax upon the transfer to Mary P. B. Hazard amounting to $82,229.28, as a tax upon her right to receive, imposed by Section 5 of said chapter, making a total assessment of $98,184.77. In making both of these assessments, the Board of Tax Commissioners refused to make a deduction of the amount paid as said Federal estate tax, although the petitioners duly claimed such deduction and on September

23, 1918, the said Mary P. B. Hazard and Rowland Hazard, as executors, paid the two taxes so assessed by the Board of Tax Commissioners, less the discount of four per cent allowed by the act, making the total amount paid $94,895.60. These taxes were paid under protest to the General Treasurer of Rhode Island.

Thereafter said executors duly filed a petition in the Superior Court for the county of Providence for the abatement of said taxes or such parts thereof as should be found to be unfair, excessive or illegally assessed, and said Mary P. B. Hazard as residuary legatee filed a similar petition.

If the Board of Tax Commissioners had made a deduction of the amount of the Federal estate tax in ascertaining the value of the net estate of the decedent, Rowland G. Hazard, for the purpose of imposing the tax upon the right to transfer under said Section 1, it would have made a difference in favor of the estate (and consequently in favor of the residuary legatee) of $11,550.71.

If the Board of Tax Commissioners had made a deduction of the amount of the Federal estate tax in ascertaining the full and fair cash value of the property transferred to Mrs. Hazard, as residuary legatee, as a tax upon her right to receive, imposed under said Section 5, after allowing the discount for prompt payment, it would have made a difference in her favor of $9,834.56.

Both taxes, as assessed by the Board of Tax Commissioners, were paid under protest to the general treasurer by the executors; and it is to secure the repayment of these amounts that these petitions were brought.

The case of *Knowlton* v. *Moore,* 178 U. S. 41, is illuminating upon the subject of estate taxes, and it is stated therein, "state duties (taxes) are distinct from Legacy or Succession duties (taxes), and what it taxes is not the interest to which some person succeeds on a death, but the interest which ceased by reason of the death." p. 49. "Confusion of thought may arise from not keeping in mind the distinction between a tax on the interest to which some person

succeeds on a death, and a tax on the interest which ceased by reason of the death, the two being different objects of taxation." p. 77.

The law imposing the Federal Estate Tax is entitled "Estate Tax." Section 6336½-B (Act of September 8, 1916, Chapter 463, Section 201) provides: "A tax . . . is hereby imposed upon the transfer of the net estate of every decedent dying after the passage of this act, whether a resident or nonresident of the United States." Section 6336½-H provides: "The executor shall pay the tax to the collector or deputy collector. . . . The collector shall grant to the person paying the tax duplicate receipts, either of which shall be sufficient evidence of such payment, and shall entitle the executor to be credited and allowed the amount thereof by any court having jurisdiction to audit and settle his accounts."

The Federal law imposes an "estate tax," as its title and construction shows, upon the whole net estate of the decedent, as distinguished from a "legacy" or "succession" tax, and requires this "estate tax" to be paid by the executor before the distribution of the estate. By no reasonable construction can this law be construed as a tax on legacies.

The Rhode Island "Inheritance Tax Act of 1916," known also as Chapter 1339 of the Public Laws, 1916, took effect upon its approval, February 22, 1916. It was prepared by the Board of Tax Commissioners and recommended by them for passage. In the Fifth Annual Report of the Board, speaking of the "Inheritance Tax Act of 1916," they say, "The principal departure from the usual form of law in force in the United States was in the imposition of a separate tax upon both the net estate, and upon the devise, legacy or bequest. The tax upon the net estate is a tax upon the right to transfer, and the tax upon the devise, legacy or bequest a tax upon the right to receive."

The Act is entitled, "An Act taxing the net estates of decedents, and inheritances, legacies and gifts." Section 1 provides, "A tax shall be and is hereby imposed upon the

net estate of every resident decedent . . . as a tax upon the right to transfer. Such a tax shall be imposed at the rate of one-half of one per centum upon the excess value of each said estate over $5,000, . . ."

Section 2 provides for the ascertainment of the *net* estate mentioned, permitting certain specified deductions to be made from the gross estate in order to ascertain the *net* estate upon which the tax is imposed by Section 1.

Section 3 provides, "The tax imposed by Section 1 of this act shall be assessed upon the full and fair cash value of the net estate determined by the board of tax commissioners as hereinbefore provided and notice of the amount of said tax shall be mailed to the executor, administrator, or trustee by said board, . . . Such tax shall be due and payable by the executor, administrator, or trustee of the estate immediately upon notification of the amount thereof, . . . Said tax shall be paid direct to the general treasurer of the state for the use of the state, and shall be and remain a lien upon the estate until the same shall be paid, and the executors, administrators, or trustees shall be personally liable for such tax until the same is paid."

Section 4 provides, . . . Any executor, administrator or trustee may appeal from the assessment of said tax as provided in Section 26 of this act."

It will be noticed that this right of appeal does not include legatees, and that the 2nd, 3rd and 4th sections are enacted solely for the purpose of providing for the imposition of the tax imposed by Section 1 and have no reference to the imposition of the legacy tax imposed by the next Section 5.

Bearing in mind the distinction heretofore referred to between a tax on the interest which ceased by reason of the death, and the interest to which some person succeeds on a death, it will be apparent that the taxes imposed under the Federal Estate Tax Law and under Section 1 of the Inheritance Tax Act are "estate taxes"; and that the measure of these "estate taxes" is the same, namely, the fair cash value of the decedent's net estate as of the date of his death.

Section 5 provides, "A tax shall be and is hereby imposed upon any transfer by a resident of this state of any real property within the state, or any tangible or intangible personal property, or interest therein or income therefrom, . . . to any person or persons, in trust or otherwise, as a tax upon the right to receive, in the following cases:   (1) When the transfer is under a will or by the statutes of descent and distribution of this state . . ."

Section 6 provides, "All taxes imposed by Section 5 of this act shall be assessed by the board of tax commissioners upon the full and fair cash value of the property transferred at the rate hereinafter described and only upon the excess of the exemption hereinafter granted, . . . and all executors, administrators, or trustees shall be personally liable for any and all such taxes until the same are paid . . . Said taxes shall be and remain a lien upon the property transferred, . . . until the said taxes are paid . . . "

Section 7 provides, "When any property or any beneficial interest therein or income therefrom shall pass to or for the use of any . . . wife, . . . the tax so imposed upon the full and fair cash value of such property, beneficial interest therein or income therefrom shall be as follows: . . . " (then follow the rates).

Section 10 provides, "All taxes imposed by Section 5 of this act, unless otherwise herein provided, shall be due and payable six months after the first appointed executor or administrator liable therefor shall file his bond, . . ."

Section 18 provides, "Unless the will or other instrument under which any gift or transfer is made shall direct the taxes imposed by Section 5 of this act to be paid from the residue or as an expense of administration, and the residue is sufficient to pay such taxes, the following provisions shall apply:   Any executor, administrator, or trustee having in charge or in trust any legacy or property for distribution subject to the tax imposed by Section 5 of this act shall deduct such tax therefrom.   If such legacy or property be not in money, he shall collect the tax thereon upon the value

thereof as determined by the board of tax commissioners from the person entitled thereto.   He shall not deliver or be compelled to deliver any specific legacy or property subject to tax under Section 5 of this act to any person until he shall have collected the tax thereon.  .  .  .   Legatees, distributees, or other donees shall be personally liable for the taxes imposed by Section 5 of this act until the same are paid over by them to the executor, administrator, or trustee. .  .  .''

It will be noticed that the foregoing sections apply only to taxes imposed by Section 5, and not to those imposed by Section 1.

The tax imposed by Section 5 is a "legacy tax," as distinguished from an "estate tax," and the measure of the tax imposed by said Section 5 upon the legatee's "right to receive" is the full and fair cash value of the property transferred to such legatee; and not upon the net estate of the decedent, as is the "estate tax" imposed by Section 1.

Section 33 provides, "Sections 20 to 32 inclusive of this act shall apply to the taxes imposed under the provisions of Section 1 and Section 5 of this act."

Section 22 provides, "Every executor and administrator .  .  .   shall within thirty days after his appointment, file with the board of tax commissioners an inventory under oath showing the full and fair cash value of the estate both real and personal of the decedent,  .  .  .   and shall within one year thereafter file with said board of tax commissioners a further statement under oath showing the gain or loss in the value of such estate during the settlement thereof, the amounts paid out from such estate for funeral expenses and expenses of administration, for the support of the widow and family of the decedent as fixed by the probate court, and for the settlement of all claims allowed against such estate."

Section 24 provides that if the Board of Tax Commissioners considers the inventory or statement erroneous or incomplete, they may summon the executor to appear before

them for examination; and the Board is authorized to appoint an appraiser. The appraiser is to make a report to the Board of Tax Commissioners of the full and fair cash value of the property; and "from such report of appraisal, and other proof relating to such estate or property before said board of tax commissioners, said board shall determine the full and fair cash value of the estate or property upon which all taxes imposed by this act are computed and the amount of taxes to which the same is liable. If no appraiser be appointed by said board as hereinbefore provided the said board may determine the value of the property upon which all said taxes are computed and the amount of taxes to which the same is liable."

Section 30 provides, "Except as otherwise provided in this act, every net estate, inheritance, devise, bequest, legacy or gift upon which a tax is imposed under this act shall be appraised at its full and fair cash value as of the date of the death of the decedent."

Upon considering the foregoing sections of the Inheritance Tax Act it will be seen that Section 1 imposes a tax on the net estate of every decedent as a tax upon "the right to transfer"; and that Section 5 imposes a separate and distinct tax upon the transfer to any person as a tax upon "the right to receive."

The value of the net estate to be used as the measure of the estate tax imposed by Section 1 upon "the right to transfer" is ascertained under the provisions of Section 2 by making certain specified deductions from the gross estate; and the full and fair cash value of the net estate of the decedent shall be determined by the Board of Tax Commissioners.

The measure of the legacy tax imposed by Section 5 upon "the right to receive" is the full and fair cash value of the property transferred to the legatee. This tax is to be paid by the executor in the first instance, and after the executor pays the tax he is to deduct the amount of it from the legacy before the transfer is made by him to the legatee under the

30

provisions of the 18th section of said act. This legacy tax is made a lien upon the property transferred and is not a lien against the net estate of the decedent as is the estate tax imposed under Section 1.

Section 30 provides that every "net estate . . . legacy or gift upon which a tax is imposed . . . shall be appraised at its full and fair cash value as of the date of the death of the decedent." This means that the stocks, bonds and other personal property, as well as the real estate, shall be appraised at the full and fair cash value prevailing at the date of the decedent's death. It is necessary to fix the value of the estate left by the decedent, as of the date of his death, in order to compute the amount of the state tax imposed by Section 1 upon his net estate, as well as the Federal estate tax imposed thereon; and also the value of any specific legacies, and the value of the property ultimately to be transferred to the residuary legatee.

The right of the decedent to have all of his property transferred upon his death, and the right of the living to receive all of said property, are not correlative and co-extensive. The law makes provision for certain deductions before imposing the estate tax under Section 1; and other debts, claims or allowances may be made by the probate court, still further reducing the amount of property the residuary legatee may be entitled to receive, subject to the tax to be imposed under provisions of Section 5.

The full and fair cash value of the property transferred as a legacy to the residuary legatee may be ascertained by either of two methods: (1) By making a list of all of the property transferred to the residuary legatee and taking the value of each item of such property from the appraisal made under said Section 30, and the sum of such values will be the full and fair cash value of the property transferred to the residuary legatee to be used as the measure of the tax to be imposed under Section 5; (2) By taking the inventory of the estate and the appraisal thereof made under said Section 30 and deducting therefrom all items of credit

allowed by the probate court in the settlement of the executor's accounts, including his final account which would show the balance to be distributed to the residuary legatee. These accounts would show the payment of general and specific legacies and also include the amounts paid by the executor, for the Federal estate tax, the estate tax imposed under Section 1, and the balance will be the full and fair cash value of the property to be transferred to the residuary legatee to be used as the measure of the legacy tax to be imposed by Section 5.

The rate of the legacy tax imposed by Section 5 depends upon the value of the property passing to the legatee and the value of the property is fixed as of the date of the death of the testator. Before the estate can be settled and the property transferred and given into the possession of the residuary legatee, the Federal estate tax must first be paid, for it is required by the express terms of the Federal act "that the tax must be paid before distribution by the executor." The state appropriates a portion of the decedent's estate at the moment of his decease under Section 1, as a tax upon his right to transfer; and the United States appropriates a portion of the decedent's estate at the moment of his decease under the Federal estate tax and imposes personal liability upon the executor for the payment thereof; and the value of the estate to be used as the measure of the tax imposed upon the residuary legatee, as a tax upon her right to receive under Section 5, is diminished by the amount of these two estate taxes paid by the executor; therefore the money required to pay the Federal estate tax and the State estate tax cannot be considered a part of the residuary estate which the residuary legatee is entitled to receive. Not to deduct the Federal estate tax in order to ascertain the value of the estate which the residuary legatee receives, would require the residuary legatee to pay a tax upon property which she never received and would not have the right to receive. Such a construction of the law would be unjust and inequitable and there is nothing in the Inheritance Tax Act of 1916 requiring such a construction.

In administering the Inheritance Tax Act of 1916, it has been the uniform practice of the Board of Tax Commissioners, for nearly five years, to deduct the amount of the estate tax imposed upon the estate of the decedent, under Section 1, as a tax upon the "right to transfer," in ascertaining the full and fair cash value of the property transferred, to be used as a measure in imposing the tax under Section 5 upon a person as a tax upon his "right to receive." This tax act was enacted as the result of the investigation, report and recommendation of the Board of Tax Commissioners. They knew what it meant and how it was intended to operate, and their administration and construction of the law may be considered in interpreting and applying it. In their seventh annual report they state that the tax imposed by Section 1 of the "Inheritance Tax Act of 1916" is nearly identical with the Federal estate tax. In the instant case the Board has deducted the estate tax imposed by Section 1 before imposing the legacy tax under Section 5, and under the same construction of a similar law the estate tax imposed by the Federal Estate Tax Law should be deducted; for the Federal estate tax imposed on the net estate of the decedent is practically the same as that imposed on the net estate of the decedent under Section 1.

Article VI of the Constitution of the United States provides, among other things, "that the constitution and laws of the United States which shall be made in pursuance thereof, . . . shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the constitution or laws of any state to the contrary notwithstanding." As we have seen, the Federal Estate Law imposes an estate tax upon the net estate of every decedent and requires his executor to pay the same; and it states that the receipt given to the executor for the payment of said tax shall be sufficient evidence of such payment and shall entitle him to be credited and allowed the amounts thereof by any court having jurisdiction to audit and settle his accounts. The reasonable construction

of this law requires the Board of Tax Commissioners to credit and allow the executor with the payment of the Federal estate tax shown by the tax receipt.   By operation of Federal law the net estate left by the decedent has been depleted by the amount of the tax, and the deceased was deprived of the right to transfer so much of his net estate as would be required to pay the Federal estate tax.   The decedent had the right to dispose of only so much of his net estate as would be left after the deduction and payment of the Federal estate tax, and the residuary legatee had the right to receive from the decedent only so much of his estate as would be left after the deduction and payment of the Federal estate tax.   For the Board of Tax Commissioners to include in the value of the property transferred to the residuary legatee the amount of money paid by the executor as the Federal estate tax would be to charge her with receiving property which she never received and never had the right to receive.   A tax based upon such a valuation would be an illegal tax because the residuary legatee never had property, to the amount of said Federal estate tax, transferred to her, and never had the right to have it transferred to her. Such procedure would ignore the validity and effect of the Federal estate law imposing such tax; requiring its payment by the executor and providing that the receipt given to the executor for the payment of the same would entitle him to be credited therefor; and it would deprive the residuary legatee, to the amount of such illegal tax, without due process of law and of the equal protection of the laws.

The principle contended for by the petitioners, namely, that the amount of the Federal estate tax imposed upon the net estate of the deceased should be deducted or excluded in ascertaining and computing the full and fair cash value of the property transferred and passing to the residuary legatee for the purpose of assessing a tax against her under said Section 5, as a tax upon her "right to receive" such property, is neither novel nor unreasonable.   It appears to be just and equitable.   The question is not so much a question of

law, or the construction of our Inheritance Tax Act of 1916, as it is a question of the application of the law to admitted facts. This principle is supported by decisions of the highest courts in the states of Massachusetts, Connecticut, New Jersey, Pennsylvania, Illinois, Indiana, Minnesota and Colorado.

As the Board of Tax Commissioners refused to make such a deduction, and included the amount of the Federal estate tax ($343,228.48) in computing and ascertaining the full and fair cash value of the property transferred and passing to the residuary legatee, and assessed the tax imposed by said Section 5 thereon, I am of the opinion that so much of said tax as was assessed upon the amount of said Federal estate tax is unfair and illegal and should be abated.

Mr. Justice VINCENT concurs in this dissent.

*Green, Hinckley & Allen,* for petitioners. *Frank L. Hinckley, Rush Sturges, Clifford A. Kingsley,* of counsel.

*Herbert A. Rice, Attorney General,* for respondent Board. *Edwards & Angell, Amici Curiae, Robert B. Dresser, Walter A. Edwards,* of counsel.