### EDWARDS v. SLOCUM et al. *

(Circuit Court of Appeals, Second Circuit. January 8, 1923.)

No. 109.

I. **Internal revenue ⬤⟳27(2)—States determine who shall pay federal estate tax.**
The United States demands payment of the estate tax from the executors, but is not concerned who shall ultimately bear the weight of the tax, which is a question for the state courts to settle, if the legatees and devisees cannot agree.

2. **Internal revenue ⬤⟳8—"Net estate" does not include amount of tax, when residue is given to charities.**
Revenue Act Sept. 8, 1916, § 201 (Comp. St. § 6336½b), imposing a tax on the transfer of the net estate of every decedent, section 202 (Comp. St. § 6336½c), defining gross estate, and section 203 (Comp. St. § 6336½d), specifying the deductions to determine the net estate, which include gifts and legacies to charitable corporations, do not permit the amount of the tax to be included in the net estate on which the tax is figured, where the residue, which under the state law would be compelled to pay the tax, was given to charitable corporations, since such construction would involve a complicated computation, would result in confusion in the several states, whose laws make different provisions for bearing the burden of the tax, and is contrary to the historical meaning of the phrase "net estate," as that which is left as available for instant use, the clear or clean estate.

[Ed. Note.—For other definitions, see Words and Phrases, Net Estate.]

In Error to the District Court of the United States for the Southern District of New York.

Action at law by Joseph Jermain Slocum and others, as executors of the last will and testament of Margaret Olivia Sage, deceased, against William H. Edwards, formerly Collector of Internal Revenue for the Second District of New York. Judgment for plaintiffs, and defendant brings error. Affirmed.

Action was brought by defendants in error as executors, etc., of Mrs. Sage, to recover part of the estate tax assessed against them as such executors, and paid under protest to the defendant, who at the time was a collector of internal revenue. Mrs. Sage died November 4, 1918, a resident of New York, and by her will disposed of her estate in a manner sufficiently set forth as follows: (1) The usual provision as to payment of debts; (2) certain pecuniary and specific legacies, with directions that some should be paid free of all legacy or inheritance taxes; (3) the residue to be divided into a certain number of equal parts, and each part given to a named educational, religious, or charitable corporation.

This estate was subject to the estate tax established by Revenue Act of 1916 (39 Stat. 756) § 201 (Comp. St. § 6336½b), reading:

"That a tax * * * equal to the following percentages of the value of the net estate, to be determined as provided in section two hundred and three, is hereby imposed upon the transfer of the net estate of every decedent dying after the passage of this act, whether a resident or nonresident of the United States. * * *"

The phrase "gross estate" is defined by section 202 (Comp. St. § 6336½c) as follows: "That the value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated."

⬤⟳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Certiorari granted 43 Sup. Ct. 524, 67 L. Ed. —.

Section 203 (Comp. St. § 6336½d) treats of "net estate" thus:

"That for the purpose of the tax the value of the net estate shall be determined—

"(a) In the case of a resident, by deducting from the value of the gross estate—

"(1) Such amounts for funeral expenses, administration expenses, claims against the estate, unpaid mortgages, losses incurred during the settlement of the estate arising from fires, storms, shipwreck, or other casualty and from theft when such losses are not compensated for by insurance or otherwise, support during the settlement of the estate of those dependent upon the decedent, and such other charges against the estate, as are allowed by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered; and

"(2) An exemption of $50,000."

The Revenue Act of 1918 (40 Stat. 1057 [Comp. St. Ann. Supp. 1919, § 6336¾d]) added, and made retroactive, so as to include this estate, a third item of deduction, viz.: "The amount of all bequests * * * to or for the use of any corporation organized and operated exclusively for religious, charitable * * * or educational purposes," etc.

Disregarding all inheritance, legacy, transfer, or estate taxes, the facts about the property passing under this will were as follows:

| | |
|---|---|
| Debts and expenses | $3,789,321.74 |
| Pecuniary legacies for charitable, etc., purposes | 1,285,000.00 |
| Pecuniary legacies for noncharitable purposes | 8,618,079.55 |
| Residuary estate, to charitable, etc., purposes | 35,436,855.70 |
| Gross | $49,129,256.99 |

The New York inheritance tax on such legacies as the will declared free of tax was $5,741.83. Plaintiff executors stated the return for United States estate tax thus:

| | | |
|---|---|---|
| Gross | | $49,129,256.99 |
| Deductions: | | |
| (1) Debts, etc. | $3,789,321.74 | |
| (2) Charitable, etc., legacies other than residual | 1,285,000.00 | |
| (3) Residuary for charity, etc. | 35,436,855.70 | |
| (4) Specific exemption | 50,000.00 | $40,561,177.44 |
| Net estate | | $8,568,079.55 |

The above shows that what was offered for tax—i. e., the "net estate"—is exactly the aggregate of pecuniary bequests to other than charitable, etc., purposes, less the specific statutory exemption. The proper tax on this net figure is admittedly $1,406,977.50. To this the commissioner objected, and restated the return, by adopting all the executors' figures except those for the "Residuary for charity, etc.," which he reduced to $33,610,506.75, thereby increasing the "net estate" by the amount of the reduction and on investigation this difference is found to be exactly—

| | |
|---|---|
| The total of the estate tax assessed, viz. | $1,820,607.12 |
| And the New York Inheritance tax above mentioned, viz. | 5,741.83 |
| Or | $1,826,348.95 |

This result, which plainly involves paying an estate tax on the amount of the tax paid was reached in a manner to be treated in our opinion. The executors sued after protest, and the trial court gave judgment on demurrer for all taxes over what they admitted as per their return, except that on or measured by the $5,741.83 of state tax. The collector then brought this writ.

William Hayward, U. S. Atty., and Richard S. Holmes, Sp. Asst. U. S. Atty., both of New York City, and Russell D. Burchard and W. Hall Trigg, both of Washington, D. C., for plaintiff in error.

De Forest Bros., of New York City (Robert Thorne, of New York City, of counsel), for defendants in error.

Sullivan & Cromwell, of New York City, amici curiæ.

Before ROGERS, HOUGH, and MAYER, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). That this is not an inheritance or legacy tax, that it is not payable by legatees or out of legacies as such, and that it is a tax payable out of and on the estate, and by the executors, is agreed (Matter of Hamlin, 226 N. Y. 407, 124 N. E. 4, 7 A. L. R. 701), and no complaint is now made as to including in whatever is taxed or measures tax the New York inheritance taxes (New York, etc., Co. v. Eisner, 256 U. S. 345, 41 Sup. Ct. 506, 65 L. Ed. 963, 16 A. L. R. 660). Taxes, however, are not laid on abstractions, names do not change facts, and every tax ultimately falls on some person, unless it be laid upon a thing without an owner, which is rare.

[1] So far as the words of this statute are concerned, the United States does not care who ultimately bear the weight of this tax; it announces the sum and demands payment from the executors; if the legatees and devisees cannot agree as to the burden bearing, the state courts can settle the matter. The New York courts have settled it, so far as this estate is concerned, by the Hamlin Case, supra; and this tax is payable out of the whole estate as a paramount charge, which in effect casts it on, or takes it out of, the residuary. That the residuary estate is devoted to charity, etc., makes no difference. We impute no motives, but it seems as if this New York rule were the suggestion for the method of tax laying here insisted on by the treasury.

The train of reasoning is that there cannot be a residuary estate until paramount charges are paid; therefore the true residuary is approximately what, in the absence of any tax, would be residuum, less the tax itself. But since such an amount of money cannot be left untagged, or otherwise at large, it must go somewhere else, and the natural place to go is the net estate. It is urged insistently that, since the residuary charities will not get what the United States takes, and would get that much more if the United States took nothing, what they do not get must be taxable, and, since that which is taxable or measures tax is called "net estate" by the statute, there it must go. Assuming this as truth, the tax layer perceives that the "net estate," which is practically synonymous with taxable estate, is to receive augmentation by an unknown amount, which renders its own figure unknown; but this baffles arithmetic, so he has recourse to an algebraic formula, which has played an unduly important part in the arguments at bar.

We have treated this formula in a footnote; [1] it is only legally important in that it has produced the argument that any method of taxation, or of working out taxes, that requires so much algebra, "must be wrong." We need not go so far, but do hold that the presumption is that Congress intended a simpler method—one that a plain man could understand. Algebraic formulæ are not lightly to be imputed to legislators.

It is next observable that this using of tax to measure tax will only happen when the residuary estate, or some part of it, is devoted to charity or other deductible purpose. If this testatrix had made her charitable bequests before inserting a residuary clause, no difficulty would have arisen. It is argued with apparent seriousness that this is "something for which the testatrix is responsible," which is true only if the law laid such a trap as this for charitable residuary legatees, as distinguished from equally charitable general legatees—again something not lightly imputable to the lawgiver.

But all states do not treat the incidence of the tax as does New York; and if distributees were ratably assessed by the tribunal of administration to pay the estate tax, or if all estate taxes were treated as "a charge against the estate," the reasoning by which this tax is supported would fail. The result would be confusion, again something not to be imputed to the act if it can be avoided. If the statutory language is considered with some attention to legal history, the phrase "net estate" is not new, but very old. It conveys the plain meaning of what is left as available for instant use; it is the clear or clean estate, a synonym unusually suggestive of the original French word.

---

[1] Let $G =$ gross estate; i. e., the amount above given.

$A =$ sum of debts, expenses, nonresiduary legacies to charity, etc., and statutory exemption; i. e., \$5,124,321.74.

$S =$ aggregate of all nonresiduary legacies, debts, expenses, and state inheritance taxes on "free of tax" legacies; i. e., \$13,698,143.12.

$K =$ total tax on all blocks up to the one last used, assumed to be \$1,722,000.

$B =$ total of blocks on which the tax is $K$, assumed to be \$10,000,000.

$\% =$ rate of tax on last block, assumed as 25 per cent.

$N =$ net estate, $R =$ residue, and $T =$ estate tax, all three assumed as unknown.

Then $G = R + S + T$

$T = K + \%\ (N{-}B)$

$N = G - (A + R)$

From these three equations, by a cumbrous system of substitutions, is evolved the final formula—equation—viz.:

$$75\% \text{ of } R = G - S - K - \%G + \%A + \%B$$

The assumed unknown R is now expressed in terms of known quantities, and can be translated into figures; and, this done, satisfaction of the equations first stated follows.

This sounds impressive, but it all starts from the assumption that B equals \$10,000,000; for that implies that N, which, of course, includes B, is over that sum. But the only possible reason for asserting N to be more than \$10,000,000 is to observe that the obvious tax measure—i. e., the sum of noncharitable legacies, plus the admitted tax—is nearly \$10,000,000.

But neither N nor B can possibly be ten million, unless the tax pro tanto measures itself. Thus the mathematician has assumed the whole legal question—has assumed as law that the tax is measured by an entity which includes the tax. The formula is only useful is reaping the fruits of this assumption concerning the law.

The net estate resulting from the legal invention of using a tax to measure a tax does not respond to that concept; it is but a fiction, never to be found, except in a tax sheet. This is artificial, not real, and is to be avoided, if at all possible.

Again, observing the language of the statute, it may be admitted that net estate is used but as a measure for tax, and is not itself taxed, for the impost is said to fall upon the entire property. This is mere matter of words; for practical purposes the net estate is the taxable estate. It is therefore a fundamental objection, not only as to the spirit but the letter of this act, that the taxable estate is augmented by a deliberate and designed encroachment upon charities.

It is the intent of the statute that charitable bequests shall not be taxed. By its regulation of the incidence of the tax, New York does in fact diminish in favor of the United States what the charities receive; but it must be wrong for the executive departments of the United States to use the rule of incidence, which is of state creation to increase its own exactions. As Holmes, J., remarked in the New York Trust Co. Case, supra, "Upon this point a page of history is worth a volume of logic." History, so far as we can discover, shows no other instance of attempting to measure a tax pro tanto by itself. As Hand, J., said in the court below, this theory departs from long established practice, and from the usage, if not the law, of never regarding the incidence of a tax in the levying of a tax.

So far as the authority goes, Dugan v. Miles (D. C.) 276 Fed. 401, is the only decision suggested on this branch of the statute. The facts in that litigation were legally identical with those at bar; yet it is true that the doctrine here contended for by the treasury was not alluded to by the experienced and able judge who wrote the opinion, although his result is consistent only with the methods pursued by these defendants in error. The inference is that neither the judge nor counsel on either side thought of such a theory, which does not seem to us surprising.

Being of opinion, therefore, that the scheme of taxation insisted on by plaintiff in error is unjust, opposed to long-established practice and the spirit of the statute, that it is not required by the language of the act, and tends to confusion taking the country over, the judgment below should be and is affirmed, with costs.