## IN RE ESTATE OF CARL J. GELIN.
## ROBERT GELIN v. ANNE E. GELIN.[1]

December 16, 1949.

No. 34,994.

[1] Reported in 40 N. W. (2d) 342.

*Cummins, Cummins, Christianson & Hammond,* for appellant.
*Beldin H. Loftsgaarden,* for respondent.

THOMAS GALLAGHER, JUSTICE.

Appeal from a district court judgment affirming a probate court order allowing the final account of the executrix of the estate of Carl J. Gelin, deceased, which included a challenged charge of $82,805.50, representing the federal estate tax paid by executrix out of the residue of the estate.

It is appellant's contention that this item should be charged proportionately against all assets and property of the estate, including certain real estate and other assets in which the executrix, as specific legatee, devisee, surviving joint tenant, and widow of decedent, was solely beneficially interested, rather than against the residue only.

Appellant, Robert Gelin, son of decedent by a former marriage, is the latter's only living issue and was 26 at the time of his father's death. His parents were divorced December 20, 1940.

Respondent, Anne E. Gelin, is decedent's second wife, his widow, and the executrix of his estate. She was married to decedent in 1941. No children were born of this marriage.

On August 28, 1944, decedent executed his last will and testament. Therein he provided:

"I.

"I hereby direct my Executrix, hereinafter named, to pay first out of my estate the costs of my last illness, if any, funeral expenses, and *costs of administration.*

"II.

"I hereby give, devise and bequeath to my beloved wife, Anne E. Gelin, the following real estate:

"Apartment building known as 1180 Grand Avenue.

"Duplex known as 1144 Grand Avenue.

"Apartment building known as 1434 Grand Avenue.

"Apartment building known as 1440 Grand Avenue.

"Apartment building known as 2040 Grand Avenue.

"I also give to her any and all the furniture, furnishings, and equipment located in all of said buildings.

"I also give to my beloved wife, my automobile and all personal things and equipment which may be in our home, to her, her heirs and assigns forever.

"III.

"All the rest and residue of my estate *of which I am possessed of at the time of my death,* I give, devise and bequeath to my son, Robert, *to him, his heirs and assigns* forever." (Italics supplied.)

At the time of his death, decedent's estate consisted principally of six large apartment buildings in St. Paul of the appraised value of $279,582. Appellant's mother, Constance Gelin, held mortgages totaling $36,000 on two of said buildings. These two buildings constituted the principal assets of the residue described in paragraph III of the will, the remaining buildings being specifically devised to respondent in paragraph II thereof.

In addition, decedent's estate included a duplex valued at $10,000; a house valued at $7,500; three other properties, previously sold on

contracts for deed upon which there was a balance due of $40,960.41; and personal property of the appraised value of $1,020. The total appraised value of the probate estate was $339,062.41.

For federal estate tax purposes only, certain other assets previously transferred by decedent, or otherwise outside the probate proceedings, were included as taxable assets of the estate as follows:

| | |
|---|---:|
| Life insurance policy payable in installments of $200 per month for 20 years to Robert Gelin, as beneficiary, in which Anne E. Gelin was contingent beneficiary | $50,232.00 |
| United States government bond payable on death to Robert Gelin | 100.00 |
| Two life insurance policies in which Anne E. Gelin was sole beneficiary | 2,291.20 |
| Joint tenancy properties, title to which became vested in Anne E. Gelin as sole surviving joint tenant | 23,702.70 |
| | $76,325.90 |

Respondent is solely beneficially interested in assets in the adjusted gross estate for federal estate tax purposes in the sum of $245,920.90, which includes $25,993.90 represented by her interest in the real estate held in joint tenancy and in the two insurance policies above described not in the probate proceedings except for federal estate tax purposes.

On October 1, 1947, executrix paid the collector of internal revenue $82,805.50, representing the entire federal estate tax on the basis of the return filed by her. This was paid from the residue of the probate estate, except for the sum of $20,236.06 advanced under protest by appellant in order to avoid the sale of real property in which he was solely beneficially interested and forming a part of the residue.

In the federal estate tax return, executrix included 21 Series E United States Savings Bonds issued in her name and the name of decedent jointly. Subsequently, respondent asserted that such bonds had been purchased by her personally and should not have been in-

cluded in the tax return. Later, pursuant to an agreement for adjustment of overassessment in the federal estate tax entered into between the collector of internal revenue and respondent, to which appellant consented in writing, respondent received a refund of $4,804.36, which included the tax originally assessed on the bonds described, plus interest.

After payment of all taxes and expenses of administration, there remained for distribution to appellant as the residue of the estate cash in the sum of $5,217.73, the refund above referred to in the sum of $4,804.36, real property of the value of $48,475, and a government bond of the par value of $100, making a total of $58,597.09 for distribution to appellant, which, less the sum of $20,236.06 advanced by appellant above described, left him a net residue in the estate of $38,361.03. In addition, of course, he is entitled to the proceeds of the $50,000 life insurance policy payable in the sum of $200 per month.

On appeal, appellant contends (1) that it was testator's intent, as manifested by his will and the intrinsic facts surrounding its execution, that the burden of the federal estate tax should be prorated in accordance with the benefits received by the beneficiaries under his will; (2) that, in the absence of the expression of such an intent, the failure of testator so to direct created the presumption that he intended that the burden of the federal estate tax should be spread proportionately among the beneficiaries; and (3) that, in any event, under equitable principles, the federal estate tax should be ratably apportioned between respondent and appellant in accordance with the assets received by them.

■ A careful reading of decedent's will fails to find any expression of decedent's intention insofar as payment of federal estate tax is concerned. There is no specific direction that it be paid proportionately by appellant and respondent in accordance with benefits derived by them, nor is there any statement to the effect that it shall be a charge against or paid from the residue thereof. In the absence of such an expression, we cannot hold that there was anything in

the will which constituted a direction to the executrix to pay such tax from certain designated assets in the estate.

■ This being true, we must look to statutes or common-law principles to determine where the burden of the tax must fall. In Riggs v. Del Drago, 317 U. S. 95, 97, 63 S. Ct. 109, 110, 87 L. ed. 106, 110, 142 A. L. R. 1131, the United States Supreme Court, in upholding the validity of a New York statute providing for the apportionment of the federal estate tax, stated:

"We are of opinion that Congress intended that the federal estate tax should be paid out of the estate as a whole, and that the applicable state law as to the devolution of property at death should govern the distribution of the remainder and the ultimate impact of the federal tax; accordingly, § 124 [of the New York decedent estate law] is not in conflict with the federal estate tax law. This conclusion is based upon the provisions of the Revenue Act of 1916, 39 Stat. 756, and subsequent acts, their legislative history and their administrative interpretation.

"* * * It [Congress] did not undertake in any manner to specify who was to bear the burden of the tax. Its [federal estate tax law] legislative history indicates clearly that Congress did not contemplate that the Government would be interested in the distribution of the estate after the tax was paid, and that Congress intended that state law should determine the ultimate thrust of the tax. That Congress, from 1916 onward, has understood local law as governing the distribution of the estate after payment of the tax (with the limited exceptions created by § 826 (c) and (d) of the Internal Revenue Code, to be discussed presently) is confirmed by § 812 (d) of the Code, dealing with charitable deductions, which recognizes that estate taxes may be payable in whole or in part out of certain bequests, etc., 'by the law of the jurisdiction under which the estate is administered.' "

■ It is clear from the foregoing that the impact of the federal estate tax must fall upon a decedent's property in such manner and in such proportion as shall be determined by local statutory enact-

ments, or, in their absence, in accordance with established judicial principles. It is undisputed that Minnesota has no statutory enactment with respect to this question, although the legislature has provided that the state estate tax shall be charged to each beneficiary in proportion to the state inheritance tax paid by him. L. 1931, c. 332.

■ In other jurisdictions, the majority of courts have held that the federal estate tax burden is properly a charge against and payable from the residue of an estate, and that no portion thereof shall be assessed against property specifically devised unless the residue is insufficient to pay such tax. First Nat. Bank v. Hart, 383 Ill. 489, 50 N. E. (2d) 461; Estate of Brown v. Hoge, 198 Iowa 373, 199 N. W. 320; New York Trust Co. v. Eisner, 263 F. 620, affirmed, 256 U. S. 345, 41 S. Ct. 506, 65 L. ed. 963, 16 A. L. R. 660; Hepburn v. Winthrop, 65 App. D. C. 309, 83 F. (2d) 566, 105 A. L. R. 310; Hughes v. Sun L. Assur. Co. (7 Cir.) 159 F. (2d) 110; Central Trust Co. v. Burrow, 144 Kan. 79, 58 P. (2d) 469; Y. M. C. A. v. Davis, 264 U. S. 47, 44 S. Ct. 291, 68 L. ed. 558.

Kentucky appears to be the only court now holding a contrary view. Hampton's Admrs. v. Hampton, 188 Ky. 199, 221 S. W. 496, 10 A. L. R. 515; Martin v. Martin's Adm'r, 283 Ky. 513, 142 S. W. (2d) 164; Trimble v. Hatcher's Ex'rs, 295 Ky. 178, 173 S. W. (2d) 985; Louisville Trust Co. v. Walter, 306 Ky. 756, 207 S. W. (2d) 328; McKinney v. Mt. Sterling Nat. Bank, 310 Ky. 186, 220 S. W. (2d) 379.

For a time the New Hampshire courts followed the apportionment principle, but subsequently reversed their prior holdings in Amoskeag Trust Co. v. Trustees of Dartmouth College, 89 N. H. 471, 200 A. 786. Subsequently, the New Hampshire legislature, by legislative enactment, returned to the apportionment principle previously followed by the courts.

It is true that most of the decisions relied upon in support of the majority rule were made prior to Riggs v. Del Drago, *supra*. However, since that decision, courts passing upon this question have adhered to the majority rule. See, First Nat. Bank v. Hart, 383 Ill.

489, 50 N. E. (2d) 461; Hughes v. Sun L. Assur. Co. (7 Cir.) 159 F. (2d) 110.

It is the opinion of this court that the majority rule should be followed. If any change be deemed necessary, it should be provided by legislative enactment.

■ It is urged that payment by executrix of the federal estate tax upon the value of certain bonds purchased by her but held by her in joint tenancy with decedent and erroneously included in the inventory for federal estate tax purposes should require modification of the lower court's order. No reference was made to this point in appellant's motion for amended findings and conclusions. Prior to this appeal, a proposal for final adjustment and settlement of the estate tax was submitted to appellant and his attorney for approval or rejection. Therein was included a proposed refund because of the inclusion of the aforesaid bonds in the return. Appellant approved the proposed settlement, and the agreement and approval were then executed and filed by executrix with the collector of internal revenue. A tax refund was then made to her, which was paid to appellant as a part of the residue of the estate. This would seem to dispose of this issue.

Affirmed.