PEARCY ET AL. *v.* CITIZENS BANK & TRUST COMPANY, OF BLOOMINGTON, INDIANA, ADMINISTRATOR, ET AL.

[No. 18,101.  Filed March 2, 1951.  Rehearing denied April 11, 1951.]

*Hickam & Hickam,* of Spencer, and *Evens & Baker,* of Bloomington, for appellants.

*Regester & Regester,* of Bloomington, for appellees.

ROYSE, J.—This appeal presents the question of whether the administrator of a decedent's estate is required to apportion federal estate taxes on property not part of decedent's estate. This is the first time this question has been presented to this or our Supreme Court.

The uncontradicted facts may be summarized as follows: Arthur Day died intestate April 17, 1947. He was survived by his widow (appellee Mary E. Day, hereinafter referred to as the widow) who was a second childless wife, and by appellants who are decedent's children by a former marriage. In addition to the personal estate passing into the hands of the administrator, the gross estate for federal tax purposes included life insurance, $16,584.72 of which was paid directly to the widow and $9,000 to appellants; real estate owned by decedent and his widow as tenants by the entirety valued at $57,611.30; jointly owned bonds and bank account which went to the widow as

survivor valued at $4,182.90; and $16,000 worth of real estate owned by decedent, in which the widow's life estate was valued at $2,061.51 and appellants' fee simple interest at $13,938.49. The total gross taxable estate was $160,579.59, of which $80,440.43 went directly to the widow and $22,938.49 to appellants. The total federal estate tax assessed and paid was $16,-497.07. The administrator paid only one-third of this tax out of the widow's share of decedent's estate and two-thirds out of appellants' share.

Appellants sought by exceptions to the administrator's final report to require it to apportion the federal estate tax among appellants and the widow. The trial court overruled the exceptions and entered judgment approving the administrator's final report. This appeal followed.

Two questions are presented by this appeal: (1) Did the trial court err in refusing to require the administrator to apportion among the widow and appellants the federal estate tax on the proceeds of policies of insurance on the life of decedent paid directly to each of them? (2) Did the trial court err in refusing to require the administrator to apportion among these parties said tax on other property included in decedent's gross estate for tax purposes but which was not part of his estate and went directly to the widow?

The following provisions of the Federal Tax Statute, 6 F. C. A., Title 26, must be considered in deciding these questions:

Section 810 imposes a graduated tax "upon the transfer of the net estate" of the decedent. Sec. 811 enumerates the assets which shall comprise the "gross estate," from which debts, expenses, exemptions and other items not here in issue may be deducted as provided in § 812, and the remainder determines the "net estate,"

the value of which shall be the basis for fixing the amount of tax.

The "gross estate" provided in § 811, in addition to all the decedent's property at the time of his death, shall include: the decedent's interest in real estate held by the decedent and his wife as tenants by the entirety and his interest in all property held as joint tenants by the decedent and another in their joint names and payable to the survivor (§ 811 e), the amount receivable by all beneficiaries (other than his estate) as insurance under policies upon the life of the decedent (§ 811 g-2) and (§ 811 g-1) life insurance paid to the estate. Also embraced in the "gross estate" are all transfers made by the decedent in contemplation of death (§ 811 c), and powers of appointment (§ 811 f), neither of which is directly involved in this appeal.

Section 827 (a) provides that the estate tax "shall be a lien for ten years upon the gross estate of the decedent," and § 827 (b) provides that "if the tax herein imposed is not paid when due, then the spouse, . . . surviving tenant, . . . or beneficiary, who receives, . . . property included in the gross estate under section 811 (b), (c), (d), (e), (f), or (g), to the extent of the value, at the time of the decedent's death, of such property, shall be personally liable for such tax . . ." Sec. 827 (c) provides that the discharge of the executor from personal liability for payment of tax shall not release any part of the gross estate for any beneficiary that may thereafter be determined to be due.

The tax "shall be paid by the executor to the collector" (§ 822 b), but "the term 'executor' means the executor or administrator of the decedent, or, if there is no executor or administrator appointed, qualified, and acting within the United States, then any person

in actual or constructive possession of any property of the decedent." (§ 930a).

Section 826 (c), dealing with liability of life insurance beneficiaries to reimburse the administrator, provides:

> "Unless the decedent directs otherwise in his will, if any part of the gross estate upon which tax has been paid consists of proceeds of policies of insurance upon the life of the decedent receivable by a beneficiary other than the executor, the executor shall be entitled to recover from such beneficiary such portion of the total tax paid as the proceeds of such policies bear to the sum of the net estate and the amount of the exemption allowed in computing the net estate, determined under section 935 (c). If there is more than one such beneficiary the executor shall be entitled to recover from such beneficiaries in the same ratio."

Section 826 (b) provides:

> *"Reimbursement out of estate.*—If the tax or any part thereof is paid by, or collected out of that part of the estate passing to or in the possession of, any person other than the executor in his capacity as such, such person shall be entitled to reimbursement out of any part of the estate still undistributed or by a just and equitable contribution by the persons whose interest in the estate of the decedent would have been reduced if the tax had been paid before the distribution of the estate or whose interest is subject to equal or prior liability for the payment of taxes, debts, or other charges against the estate, it being the purpose and intent of this subchapter (§§ 800 to 931 of this title) that so far as is practicable and unless otherwise directed by the will of the decedent the tax shall be paid out of the estate before its distribution."

In the case of *Gaede* v. *Carroll* (1933), 114 N. J. Eq. 524, 531, 169 Atl. 172, 175, the widow appealed from so

much of a decree that the executor was entitled to reimbursement for the proportionate amount of federal estate taxes paid by him on the proceeds of life insurance policies paid directly to her and also on the value of real property, title to which testator and wife held in his life as tenants by the entirety. The ninth clause of testator's will provided as follows:

> "I direct that any and all inheritance taxes whatsoever, that may be levied or assessed against the share herein given by any of the provisions hereunder to my said wife, shall be paid out of my said estate, it being my intention and wish that the bequests or provisions herein made to her or for her benefit shall go to her free from any and all inheritance or other taxes."

The court then quoted the following conclusions of the Chancellor:

> "It is urged in behalf of the testator's widow that all taxes paid by the testator's executor were properly chargeable to the residuary estate, and that the executor is not entitled to reimbursement from her for taxes represented by Glen Ridge property and insurance moneys received by her. The concluding part of the aforesaid testamentary clause expressing the testator's intention and wish that 'the bequests or provisions herein made to her or for her benefit shall go to her free from any and all inheritance or other taxes' manifests that the testator did not contemplate payment from his estate of taxes on the Glen Ridge property (title to which was held by the testator and his wife as an estate by the entirety) or of taxes on moneys payable directly to his widow, on policies of insurance issued upon his life in which she was designated as beneficiary. The fact that the executor was obliged under federal laws to include the amount of insurance carried on the life of the testator as part of the testator's gross estate for the purpose of computing federal inheritance taxes payable is of inconsequence in the matter *sub judice*. The federal law required the executor to

pay from the testator's estate the amount of inheritance taxes payable on such insurance moneys which were included as part of testator's gross estate, but, notwithstanding, the testator's widow as beneficiary named in the policies of insurance and to whom the insurance money was paid is required to reimburse the executor therefor. The fact that the testator reserved in his contracts of insurance the right to make a change in the designation of the beneficiary named in the policies issued upon his life is of no consequence in the matter *sub judice* as between the executor and the testator's widow. The federal law contemplates payment of inheritance taxes by executors, and the executors are entitled to reimbursement from the person receiving the moneys upon which the inheritance tax is paid, and if such person and the executor cannot agree with respect to such reimbursement recourse may be had to the state courts for a settlement of the matter."

In upholding these conclusions, the court said:

"We agree with these conclusions. The federal statute specifically provides for reimbursement by the beneficiary of life insurance policies to the executor for taxes paid, and the will in the instant case cannot be said to impose this tax upon the residuary estate."

In the case of *Brauburger* v. *Sheridan* (1950), 7 N. J. Super. 576, 580, the court upheld the construction of the court in the last cited case as to the provision of § 826 (c), *supra,* while, for reasons which we do not approve, it in effect overruled its holding on the question of tenancy by the entireties.

In the case of *Priedman* v. *Jamison* (1947), 356 Mo. 627, 202 S. W. 2d 900, the court, in passing on a provision of testator's will analogous to that in *Gaede* v. *Carroll, supra,* speaking on this question, said:

"As stated, unless excepted in the Internal Revenue Act, any apportionment of the Federal

Estate Tax is governed by local law. *Such an exception is made in the Act, as we have seen, where a part of the gross estate upon which the tax has been paid consists of proceeds of policies of insurance upon the life of the decedent receivable by a beneficiary other than the executor.* § 826 (c) supra. (Our emphasis). The executor in such instance and as herein is entitled to recover of the insurance beneficiary the attributable portion of the total tax paid (unless the testator has *directed* otherwise in his will). In such an instance it may be said Congress has designated the fund which shall contribute in pro rata reimbursement of the Federal Estate Tax assessed against the estate and paid by the executor, unless the testator has otherwise directed in his will. Should it be held appellant is not so subject to liability, the effect of such a ruling would be to increase appellant's insurance benefits and shift the ultimate burden of the portion of the tax (attributable to the insurance and otherwise recoverable by appellant under the provisions of Sec. 826 (c), supra) to recipients of the testator's testamentary dispositions. We should not so rule unless it is clear the testator has so *directed.*" (Court's emphasis).

In the case at bar the decedent, having died intestate, obviously did not direct otherwise in reference to the provisions of § 826 (c), *supra.* By the plain unambiguous terms of that provision it became the duty of the administrator to collect the portion of the tax paid on the proceeds of the life insurance paid to the widow and appellants. Therefore, the trial court erred in overruling the first exception of appellants to the administrator's final report.

We next proceed to a consideration of the second question presented. It is conceded by the parties hereto that the entireties real estate comprised no part of decedent's estate but upon decedent's death the widow, by virtue of her right of survivorship, became seized of the whole estate in said property. The same is true

of the United States Savings Bonds and the joint bank account.

The question with which we are here confronted has caused the courts of the various states much concern since the enactment of the Federal Estate Tax Act. For many years there was much confusion and uncertainty as to whether this Act placed the ultimate burden of the tax upon the residue of the estate. However, it appears to us that question has been settled by the Federal Court in the case of *Edwards* v. *Slocum et al.* (1923, C. C. A. 2d), 287 Fed. 651, 653, where the Court said:

> "So far as the words of this statute are concerned, the United States does not care who ultimately bear the weight of this tax; it announces the sum and demands payment from the executors; if the legatees and devisees cannot agree as to the burden bearing, *the state courts can settle the matter."* (Our emphasis).

The Supreme Court of the United States affirmed this decision. *Edwards* v. *Slocum* (1924), 264 U. S. 61. If there was any doubt regarding that case it was, in our opinion, settled in the case of *Riggs* v. *Del Drago* (1942), 317 U. S. 95, 87 L. Ed. 106, 63 S. Ct. 109, 142 A. L. R. 1131. That decision involved a New York statute providing for apportionment of the tax. The New York Court of Appeals, *In re Del Drago's Estate* (1941), 287 N. Y. 61, 38 N. E. 2d 131, in line with its prior holding, nullified this statute on the grounds it was in conflict with the Federal law. The Supreme Court of the United States granted certiorari and reversed the New York Court of Appeals. In that case the Supreme Court said:

> "We are of the opinion that Congress intended that the federal estate tax should be paid out of the estate as a whole, and that the *applicable state*

*law* as to the *devolution of property* at death *should govern the distribution of the remainder and the ultimate impact of the federal tax;* accordingly, § 124 is not in conflict with the federal estate tax law. . . .

". . . Its legislative history indicates clearly that Congress did not contemplate that the Government would be interested in the distribution of the estate after the tax was paid, and that *Congress intended that state law should determine the ultimate thrust of the tax.* That Congress, from 1916 onward, has understood local law as governing the distribution of the estate after payment of the tax (with the limited exceptions created by § 826 (c) and (d) of the Internal Revenue Code, to be discussed presently) is confirmed by § 812 (d) of the Code, dealing with charitable deductions, which recognizes that estate taxes may be payable in whole or in part out of certain bequests, etc., 'by the law of the jurisdiction under which the estate is administered.' The administrative interpretation has been in accord, and that has been the understanding of the federal courts, and of some state courts.

"In reaching a contrary result, the court below relied primarily upon § 826 (b). But that section does not direct how the estate is to be distributed, *nor does it determine who shall bear the ultimate burden of the tax.* . . . Section 826 (b) *does not command* that the tax is a non-transferable charge on the residuary estate; to read the phrase 'the tax shall be paid out of the estate' as meaning 'the tax shall be paid out of the *residuary* estate' is to distort the plain language of the section and to create an obvious fallacy. . . . In short, § 826 (b), especially when cast in the background of Congressional intent, discussed before, simply provides that, if the tax must be collected after distribution, the final impact of the tax shall be the same as though it had first been taken out of the estate before distribution, *thus leaving to state law the determination of where that final impact shall be.*

"Respondents also rely on § 826 (c), authorizing the executor to collect the proportionate share of the tax from the beneficiary of life insurance in-

cludable in the gross estate by reason of § 811 (g), and § 826 (d), authorizing similar action against a person receiving property subject to a power which is taxable under § 811 (f), as forbidding further apportionment by force of state law against other distributees. But these sections *deal with property which does not pass through the executor's hands* and the Congressional direction with regard to such property is wholly compatible with the intent to leave the determination of the burden of the estate tax to state law as to properties actually handled as part of the estate by the executor." (Our emphasis).

See also: *Fernadez* v. *Wiener* (1945), 326 U. S. 340, 90 L. Ed. 116, 66 S. Ct. 178.

We agree with appellants when they say the net effect of *Riggs* v. *Del Drago, supra,* is that the states *may* legislate on the subject of apportionment of estate tax only because Congress has *not* done so in the Federal Estate Tax Act. By the same token, there is nothing in the Act of Congress to hamper the state courts, in the exercise of their jurisdiction over the administration and settlement of estates, from applying equitable rules whereby, as the result of case law, equitable apportionment of this tax is accomplished in each estate.

Appellees agree that Federal estate tax does not preclude apportionment of the tax by the States. But they contend that in the absence of a state statute providing for such apportionment or of a testamentary provision directing apportionment the burden of the tax must fall upon the residuary or *general* estate of the decedent, citing: *Brauburger* v. *Sheridan, supra; Taylor* v. *Jones* (1922), 242 Mass. 210, 136 N. E. 382— certiorari denied, *Jones* v. *Taylor* (1922), 260 U. S. 742, 43 S. Ct. 99, 67 L. Ed. 491; *Gelin* v. *Gelin* (1949), 229 Minn. 516, 40 N. W. 2d 342; *Farmers Loan & Trust Co.*

v. *Winthrop* (1924), 238 N. Y. 488, 144 N. E. 769;
*Rogan* v. *Taylor* (C. C. A. 9th, 1943), 136 F. 2d 598;
*Amoskeag Trust Co.* v. *Trustees of Dartmouth College*
(1938), 89 N. H. 471, 200 Atl. 786, 117 A. L. R. 1186
[overruling *Fuller* v. *Gale* (1918), 78 N. H. 544, 546,
103 Atl. 308, 309 and other New Hampshire cases. Note:
New Hampshire has since passed an apportionment
act.] ; *Central Trust Co.* v. *Burrow* (1936), 144 Kan.
79, 58 P. 2d 469; *Hazard* v. *Bliss* (1921), 43 R. I. 431,
444, 113 Atl. 469, 475; *Y.M.C.A.* v. *Davis* (1924),
264 U. S. 47, 51, 44 S. Ct. 291, 68 L. Ed. 558; *State* v.
*First Calumet Trust Co.* (1919), 71 Ind. App. 467, 470,
125 N. E. 200; *Campbell* v. *Union Trust Co.* (1949),
227 Ind. 692, 88 N. E. 2d 560; *Anno.*, 142 A. L. R. 1135,
1137 (1943). Some of these cases do tend to lend
some support to appellees' position. However, it is to
be noted most of them were decided before the case
of *Riggs* v. *Del Drago, supra*. For the reasons herein-
after stated we are of the opinion they are based on
an erroneous concept of the Federal Estate Tax Act.
Furthermore, those cases involved provisions of wills
in testate estates, while we are here considering an
intestate estate. The case of *State* v. *First Calumet
Trust Co., supra,* does not support appellees' position.
All that case holds is that the amount paid under the
provisions of the Federal Estate Tax Law should be
allowed as a reduction of the net estate upon which
the assessment of the Indiana Inheritance Tax Law
is based. The case of *Campbell* v. *Union Trust Co.,*
*supra,* was dismissed by the Supreme Court and did
not involve the question presented here.

Appellants contend the Federal Estate Tax Act does
not make entirety real estate and other property owned
jointly with the right of survivorship a part of
the decedent's estate. It merely includes such
property in the estate of such decedent for the

purpose of assessing and collecting the tax. As a question of property and its devolution it is a subject of state law. The federal estate tax occasioned by such property is to be borne ultimately by the property itself and not by the decedent's residuary estate.

In the case of *Hooker* v. *Drayton* (1943), 69 R. I. 290, 33 A. 2d 206, 150 A. L. R. 723, the Supreme Court of Rhode Island said:

> "The federal estate tax law does not make property appointed under a general power a part of the decedent donee's estate. It merely includes such property in the estate of such decedent for the purposes of assessing and collecting the tax. Int. Rev. Code, § 811 (f), 26 U. S. C. A. Int. Rev. Code, § 811 (f). As a question of property and its devolution it is a subject of state law. . . .

> "The fact that the statute provides that the tax is to be paid by the executor before distribution of the estate has led to some confusion in that certain state courts have construed it as a mandate of Congress charging the tax upon the decedent's residuary estate. (Citing authorities). But at least since 1922 the interpretation of the Treasury has been that it was not interested in the incidence of the burden of the estate tax. See Art. 85, Regulation 63, and subsequent regulations. And it was held by the Federal Circuit Court of Appeals of the 2nd Circuit in 1923 that 'so far as the words of this statute are concerned, the United States does not care who ultimately bear the weight of this tax; it announces the sum and demands payment from the executors; if the legatees and devisees cannot agree as to the burden-bearing, the state courts can settle the matter.' *Edwards* v. *Slocum*, 287 Fed. 651,653 affirmed 264 U. S. 61, 44 S. Ct. 293, 68 L. Ed. 564.

> "Notwithstanding that decision, the New York Court of Appeals adhered to the view that Congress had definitely provided that the burden of the tax rested upon the decedent's residuary estate. That court went even to the extent of holding that a New York statute which provided for apportion-

ment of the tax violated both the supremacy and. uniformity clauses—Art. VI, cl. 2 and Art. I, sec... 8, cl. 1—of the federal constitution. *Matter of Del Drago's Estate,* 287 ·N. Y. 61, 38 N. E. 2d 131.' That case, however, prompted the United States Supreme Court to grant certiorari in order finally.. to determine the question. It was there definitely decided 'that Congress · intended that the federal estate tax should be paid out of the estate as a · whole and that the applicable state law as to the devolution of property at death should govern the distribution of the remainder and the ultimate impact of the federal tax.' *Riggs, Jr.* v. *Del Drago,* November 9, 1942, 317 U. S. 95, 63 S. Ct. 109, 110, 87 L. Ed. 106, 142 A. L. R. 1131. . . .

"Now what is the applicable state law here? It is true that the rule is, as it is generally, that, in the absence of a contrary testamentary direction, the burden of all debts, charges and obligations falls upon the residue of the estate. *Hazard* v. *Board of Tax Commissioners,* 43 R. I. 431, 444, 113 Atl. 469, 474, 23 A. L. R. 826. But the rule as thus stated *is applicable only to the true estate of the testator within the meaning of our law of property.* Under that law, property which is transmitted by a testator in the exercise of a power granted to him by another to appoint by will is neither in law nor in fact a part of the testator's estate. (Authority cited.) *An act of Congress containing a provision expressly designed to facilitate the collection of the federal revenue does not alter the law of property of this state.* So the federal estate tax statute, 'while it assumes that the entire tax should be paid out of the residuary estate, does not propose to regulate. the question.' 1 Paul, Federal Estate & Gift Taxation, § 9.26, p. 476. . . .

"What then' is the true rule of construction to be followed in determining whether the estate of a decedent donee of a power to appoint by will is to be charged with the burden of the federal estate tax assessed on the exercise of the power? We think it is this: In the absence of a clearly expressed intent to the contrary in the decedent

donee's will *such tax is ultimately to be borne by the appointed property, and not by his residuary estate.* Such a rule is more consistent with logic and the realities than is a rule which, in the absence of a testamentary expression to the contrary, would assume that the residuary estate of the donee was chargeable with such tax burden." (Our emphasis).

In the case of *Hampton's Adm'rs* v. *Hampton* (1920), 188 Ky. 199, 221 S. W. 496, 10 A. L. R. 515, the Court of Appeals of Kentucky stated the question before it as follows:

"A. B. Hampton, a resident of Clark County, died intestate and without issue in the month of February, 1919. His estate passed to his widow, L. A. Hampton, and certain collateral kindred. Where the husband dies intestate, the widow, in addition to dower, is entitled to one-half of the surplus personalty. The estate of the intestate consisted of personalty worth about $30,000, and several hundred acres of land. In a proper proceeding, the land, other than the widow's dower, was sold by the master commissioner of the Clark Circuit Court for the sum of $295,236.26, the ordinary indebtedness of the estate amounting to about $5,000. The estate tax to the federal government is approximately $20,000. . . .

"The court adjudged that the estate tax was payable before distribution, and that there should be deducted, from the personal property going to the widow, such proportion of the entire estate tax as the value of all the property allotted to her bore to the entire estate, and that her interest in the estate should be ascertained by adding the value of her dower as fixed by the life tables to one-half of the surplus personalty after paying funeral expenses, costs of administration, and the debts of decedent, including state and county taxes due upon assessments made in his name. The administrators appeal."

In affirming the decision of the court, the Court of Appeals said:

"The argument in behalf of the administrators is as follows: The estate tax is not an inheritance tax, but a tax upon the transfer of property from the decedent to others. The value of the separate interests and the relationship of the beneficiaries to the decedent have no bearing upon the question of liability, or the extent thereof. The tax is payable by the personal representative who would have nothing in his hands with which to pay the tax except personal property. In speaking of contribution in section 208, *supra,* the section recognizes that some portion of the estate is subject to a 'prior liability,' and this liability is necessarily the personal estate. It therefore follows that the estate tax is primarily a charge upon the personal estate, and the widow is not entitled to one-half of the personal estate of the decedent until the estate tax has been paid.

"In view of the inequality that would result, we are reluctant to adopt the view that the estate tax is a charge on the personal estate, unless compelled to do so by the language of the act itself. It is conceded that there is no express provision to that effect, but insisted that the nature of the tax, the method of its collection, and other considerations made it clear that such was the purpose of Congress.

"We do not regard as controlling the fact that the primary duty of paying the tax is imposed upon the executor, in view of the fact that the executor may be 'any person who takes possession of any property of decedent,' and the further consideration that the obligation of the personal representative to pay the tax is a mere rule of administration to insure its payment, and does not in any way affect the rights of the heirs and distributees as among themselves. Nor can we say that the words 'prior liability' in section 208, necessarily refer to the liability of the personal estate of the decedent. They may as well refer to prior liability imposed by statute, or by the will of the testator. Considering the act as a whole, and particularly the

provisions with respect to reimbursement and contribution, we cannot escape the conclusion that Congress did not intend to discriminate between the widow, heirs and distributees, but intended that every portion of the estate should bear its proportionate part of the tax, subject, however, to the right of the decedent to provide by will out of what portion of his estate the tax should be paid."

Again twenty years later in another intestate estate the Kentucky Court, in the case of *Martin et al.* v. *Martin's Adm'r, et al.* (1940), 283 Ky. 513, 142 S. W. 2d 164, refused to overrule the Hampton case, *supra.* The court said:

"At the threshold we are asked to reverse the case of Hampton's Administrator v. Hampton, 188 Ky 199, 221 S. W. 496, 10 A. L. R. 515, in which we determined the identical question in accordance with the judgment of the trial court and which opinion it followed in rendering the judgment appealed from. The request by learned counsel for appellants is based on what they term as the 'unsoundness of the Hampton opinion,' and which they contend stands almost aloof from the list of cases. decided since it was rendered, and in which it is claimed the question was decided contrary to the way it was done in the Hampton opinion. The cases relied on by learned counsel as sustaining their contention, and to induce us to retract the Hampton opinion, as contained in their brief are: Plunkett v. Old Colony Trust Co., 233 Mass. 471, 124 N. E. 265, 7 A. L. R. 696; Knowlton v. Moore, 178 U. S. 41, 20 S. Ct. 747, 44 L. Ed. 969; Hepburn, Ex'r v. Winthrop, etc., 65 App. D. C. 309, 83 F. 2d 566, 105 A. L. R. 310; New York Trust Co. v. Eisener, 256 U. S. 345, 41 S. Ct. 506, 65 L. Ed. 963, 16 A. L. R. 660; Turner v. Cole, 118 N. J. Eq. 497, 179 A. 113; Y. M. C. A. v. Davis, 264 U. S. 47, 49, 44 S. Ct. 291, 68 L. Ed. 558; In re Hamlin, 226 N. Y. 407, 124 N. E. 4, 7 A. L. R. 701; People v. Pasfield, 284 Ill. 450, 120 N. E. 286. We have read each of them and find, to begin with, that they (wherein the question

was presented) chiefly, if not exclusively, dealt with cases where the decedent died testate whereby the inference was drawn by the court dealing with the question that he had the right to direct in his will how the federal burden should be distributed as between the beneficiaries provided for in his will, and not having done so it would be presumed that he intended for the personalty of his estate to bear the burden of the tax (but which we do not now determine) which would, as we have said, operate to the detriment of the legatees of the testator, to whom he gave his personal property, and relieve his devisees, to whom he gave his real estate.

"We have no such situation here, since the decedent died intestate and, therefore, performed no act from which such inferences or presumptions might arise. . . .

"Indeed, the foundation of the industriously written argument of counsel for appellants is bottomed entirely upon their definition—supported by some of the opinions they rely on—of the nature and character of the involved federal tax, and from which they assume by analogy should primarily be paid out of personal property left by a decedent before touching the real estate left by him and which rule they argue should apply as between the beneficiaries of the two different classes of property. However, since no such requirement is made in the federal statute levying the tax, and since it would, as held in the Hampton opinion, be unjust and inequitable, we conclude that in the absence of specific direction to the contrary *justice requires that all classes of beneficiaries participating in the net value of the estate left after the federal tax is satisfied and deducted should, as between themselves, bear their just proportion of it.*" (Our emphasis).

In the case of *Succession of Ratcliff* (1947), 212 La. 563, 33 So. 2d 114, in holding that a widow was liable for her proportionate share of the Federal estate tax, the court said:

"We think that the failure of counsel to discover the justice in requiring that the tax be shared proportionately by all emanates from their unwillingness to recognize that there is but one estate for federal taxation purposes and that the tax is levied on the whole, i.e.—the community and separate property. This being so, *equitable principles demand that the burden be divided between all persons sharing in the estate in accordance with their respective interests.* . . . The widow in community cannot require the heirs of her husband to pay more than their just proportion of the increased rate of taxation brought about by the *addition of her community interest to the total estate* for taxation purposes." (Our emphasis).

To the same effect see also, *Henderson* v. *Usher* (1936), 125 Fla. 709, 170 So. 846; *Regents of University System* v. *Trust Co. of Georgia* (1942), 194 Ga. 255, 21 S. E. 2d 691; *Bernheimer et al.* v. *First Nat. Bank of Kansas City, Mo. et al.* (1943), 352 Mo. 91, 176 S. W. 2d 15.

■ In 19 Am. Jur., Equity, p. 40, § 3 it is stated:

"The office of equity is to supply defects in the law. Aristotle defined the nature of equity to be the 'correction of the law where, by reason of its universality, it is deficient.' In the same sense it is repeatedly recognized in the Pandects, and this explanation of Aristotle has been adopted or approved by later authors, such as Grotius, Puffendorf, Blackstone, and Story."

■■ In 30 C. J. S., Equity, p. 517, § 109, it is stated:

"It has frequently been stated that equality is equity. The maxim is one of broad application, and should never be departed from or in any wise rejected unless it is clearly not intended to apply. It is applicable to burdens as well as to rights, and means that, in the absence of relations or conditions requiring a different result, equity will treat all members of a class as on an equal footing,

and will distribute benefits or impose burdens and charges either equally or in proportion to the several interests, and without preferences."

We approve the views expressed in the authorities from which we have quoted so extensively herein. In our opinion they are based on sound principles of law, logic and justice. Insofar as intestate estates are concerned they represent the majority view of the states which have passed on the questions presented by this case. The facts herein demonstrate the righteousness of their conclusion. As heretofore indicated, the value of the total estate of decedent for tax purposes was $160,579.59. Of this amount the widow received directly property of the value of $80,440.43 on which the federal tax was $8,265.03. The appellants received directly property of the value of $22,938.49 on which the federal tax was $2,359.08. The legal estate administered by appellee held property of the value of $57,200.67 on which the federal tax was $5,872.96. Under our law the widow and appellants participate equally in the legal estate. Thus we see the action of the trial court in refusing to require appellee to apportion the federal tax in effect requires appellants to pay from their share of the legal estate more than $7,000 of the tax attributable to the widow. The net result of such action is to permit a provision of the Federal Tax Act, § 822 (b), enacted for the purpose of convenience and efficiency in the assessment and collection of the tax, to change our law of devolution. This was not the intent or purpose of this Act. *Edwards* v. *Slocum, supra; Riggs* v. *Del Drago, supra.*

We believe the cases from the states holding against the right of apportionment except where there is specific statutory authority therefor, or a specific provision therefor in the will of the decedent, are based

upon an erroneous concept of the Federal Estate Tax Act and a misinterpretation of the provisions thereof. The Act does not apply only to the legal estate of a decedent which in this state generally means only the personal property owned by an intestate decedent at the time of his death, except where it is necessary to use all, or a portion, of the real property he owned to pay debts. It also includes in the gross estate of a decedent real estate owned by the decedent with another as tenants by the entireties and personal property owned jointly going to the survivor. Obviously the administrator of the legal estate has nothing to do with such property. Neither can he, under our law, use the assets of the legal estate to enhance the value of such property. Yet that is the effect of the judgment of the trial court in this case.

Therefore, we hold the federal estate tax should be apportioned between the appellants and the widow. The tax attributable to the proceeds of the life insurance should be apportioned between them in accord with the provisions of § 826 (c), *supra;* that attributable to decedent's real estate should be apportioned between the widow and appellants in accord with their respective interests in said real estate; that attributable to the legal estate should be apportioned equally between the widow and appellants.

Inasmuch as a new trial would serve no good purpose, the judgment is reversed with instructions to the trial court to sustain appellants' exceptions to the final report, and for further proceedings in accord with the views expressed herein.

NOTE.—Reported in 96 N. E. 2d 918.

## ON PETITION FOR REHEARING

ROYSE, J.—This court recognizes that like all other human institutions it may err in its decisions or in the reasoning upon which a decision is based. Therefore we welcome petitions for rehearing when a litigant believes we have made a mistake. In such petitions we do not resent honest criticism regardless of how vehement such criticism may be.

However, we do feel that attorneys who act for their clients in this court should not let their zeal for their client's cause, or their chagrin at an adverse decision lead them into making false and unjust charges that this court has uttered an untruth. The appellees have done just that in their petition for a rehearing in this case.

In our original opinion, in our discussion of the authorities cited in support of our conclusions, we said: "Insofar as intestate estates are concerned they represent the majority view of the states which have passed on the questions presented by this case." In their petition for rehearing, referring to that statement, appellees say:

"Intellectual honesty requires the statement that this is untrue, for the following reasons:

"The Kentucky cases cited are contrary to the majority view, as evidenced by the candid admission of the Kentucky court in *Dawson* v. *Gaines* (1945), 299 Ky. 100, 184 S. W. 2d 895, where the court observed that it is unnecessary to discuss *either* the majority rule, or 'our own decisions.'"

The case of *Dawson* v. *Gaines, supra,* did not involve an intestate estate. In that case the court held that a provision of the will required that the federal tax be paid out of the residuary estate. The court then said:

"Since we have concluded that the tax should be paid out of the residue of the estate, it is unnecessary to discuss either the majority rule that the burden of the Federal estate tax should be charged against the general estate or its residue except where there is a contrary direction found in the will or a state statute, or our own decisions which appellants urge us to overrule to the effect that in the absence of such a direction, *and in cases of intestacy,* the tax should be borne by the beneficiaries in proportion to the benefits received." (Our emphasis).

In our original opinion, in addition to the two Kentucky cases cited we cited authority from Florida and Louisiana authorizing apportionment in intestate estates. It is significant to us the appellees have not, either in their original brief or their petition for rehearing, cited a single authority to sustain their allegation that our statement was untrue.

As a further ground for rehearing, appellees say:

"By its refusal to grant a new trial, and its judgment that the trial court *must* sustain appellants' exceptions, the Court has denied appellees the opportunity to introduce evidence on the problem of *equitable* apportionment. For example, appellees are denied the opportunity of introducing any evidence (a) whose assets purchased the tenancies by the entireties, (b) what the assets of decedent were when he married appellee, Mary E. Day, (c) whether the efforts of Mary E. Day, produced or contributed to the collection of these assets."

Our decision and mandate does not affect any rights the widow may have in reference to those matters. They are questions to be determined between her and the Federal government.

Petition for rehearing denied.

NOTE.—Reported in 98 N. E. 2d 231.